# THE STATE OF MARYLAND *vs.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY. SAME *vs.* SAME.

*Act of 1872, ch. 234—Tax on the Gross receipts of Railroad companies, not in violation of the 15th Article of the Bill of Rights—Tax upon the Franchise of Railroad companies— Exemption from Taxation by Legislative enactment—Right to Tax Gross receipts of Railroad companies, when not Exempted by Legislative provision—Apportionment of Taxes on Gross receipts of a Railroad company.*

The imposition by the Act of 1872, ch. 234, of a tax of one-half of one per centum upon the gross receipts of all railroad companies worked by steam, incorporated by, or under authority of the State, and doing business therein, in lieu of all other taxes, is a valid exercise of Constitutional power.

Such tax is not a direct tax upon the property of the companies within the meaning of the 15th Article of the Bill of Rights, but a tax upon the franchise of said companies, measured by the extent of their business.

The appellee was formed by a union of the Baltimore and Port Deposit Railroad Company, extending from the City of Baltimore to the Susquehanna river, The Wilmington and Susquehanna Railroad Company, extending from said river to the Delaware and Pennsylvania line, and The Philadelphia, Wilmington and Baltimore Railroad Company, extending from the Delaware line to Philadelphia, thus forming a continuous line from Baltimore to Philadelphia. The Wilmington and Susquehanna Railroad Company was also formed by the union of a company chartered by that name by the State of Delaware, and the Delaware and Maryland Railroad Company, incorporated by the State of Maryland, and running from the Susquehanna river to the Maryland and Delaware line. Section 19 of the Act of 1831, ch. 296, incorporating the latter company, provided, "That the said road or roads, with all their works, improvements and profits, and all the machinery of transportation used on said road, are hereby vested in said company * * * * and the shares of the capital stock of said company shall be deemed and considered personal estate, and shall be exempt from

the imposition of any tax or burthen by the State's assenting to this law, except upon that portion of the permanent and fixed works of said company which may be within the State of Maryland." By the consolidation of these companies, the qualified exemption granted by the Act of 1831, ch. 296, to the Delaware and Maryland Railroad Company, became vested in the Philadelphia, Wilmington and Baltimore Railroad Company. Under the Act of 1872, ch. 234, a tax of one-half of one per centum was imposed upon the gross receipts of the Philadelphia, Wilmington and Baltimore Railroad Company in lieu of all other taxes. In a suit by the State to recover the tax thus imposed, it was HELD:

1st. That under the exemption granted by the Act of 1831, ch. 296, it was not competent for the Legislature to impose a tax upon the gross receipts of that portion of the road of the defendant which was formerly the Delaware and Maryland railroad.

2nd. That as there was no exemption from taxation in the charter of the Baltimore and Port Deposit Railroad Company, the Legislature had the right to tax the gross receipts of that portion of the road of the defendant which formerly constituted the Baltimore and Port Deposit Railroad, being the only other portion of the road of the defendant lying within the State of Maryland.

3rd. That the plaintiff was entitled to recover one-half of one per centum on the same proportion of the gross receipts of the defendant, on its entire road, as the length of the Baltimore and Port Deposit Railroad, constituting a part of the road of the defendant, bore to the whole length of the defendant's road.

## Appeals from the Superior Court of Baltimore City.

These two suits were brought by the appellant to recover from the appellee a tax of one-half of one per cent. on its gross receipts, in the one case, from the 1st of April, 1872, to the 31st of December, 1872, and in the other case from the 31st of December, 1872, to the 31st of December, 1873. In the case brought on the 6th of September, 1873, the declaration claimed one-half of one per cent. on the same proportion of the whole gross receipts of the road, as the length of the company's track in Maryland, bore to the whole length of the road, which ran through the States of Maryland, Delaware and Pennsylvania. In the case

brought on the 12th of July, 1875, the declaration in its terms claimed percentage upon the total gross receipts. The claim in both cases rested on the Act of 1872, ch. 234. This Act was repealed, and re-enacted with amendments by the Act of 1874, ch. 408, all existing rights being reserved. At the trial of the causes, the plaintiff and defendant entered into an agreed statement of facts, from which it appears, that the appellee was formed by an agreement of union dated the 5th of February, 1838, duly made and entered into between the following corporations to wit: The Baltimore and Port Deposit Railroad Company, the Wilmington and Susquehanna Railroad Company, and the Philadelphia, Wilmington and Baltimore Railroad Company, (of Pennsylvania.) That the Baltimore and Port Deposit Railroad Company was incorporated by the Act of 1831, ch. 288, of the General Assembly of Maryland. The Wilmington and Susquehanna Railroad Company was formed by an agreement of union, duly made and entered into on the 18th April, 1836, between the Delaware and Maryland Railroad Company, and the Wilmington and Susquehanna Railroad Company, (of Delaware,) in virtue and in strict pursuance of the several Acts, in said agreement of union recited, and was certified and recorded as directed by said several Acts. The said corporation, the Delaware and Maryland Railroad Company was incorporated by the Act of 1831, ch. 296, of the General Assembly of Maryland. The Wilmington and Susquehanna Railroad Company, (of Delaware,) was incorporated by an Act of the General Assembly of Delaware, passed on the 18th of January, 1832. The Philadelphia, Wilmington and Baltimore Railroad Company, (of Pennsylvania,) was originally chartered by an Act of the General Assembly of the Commonwealth of Pennsylvania, approved on the 2nd of April, 1831, by the name of the Philadelphia and Delaware County Railroad Company, which, by a supplement to said Act, passed the 14th

of March, 1836, was changed to the corporate name of
"The Philadelphia, Wilmington and Baltimore Railroad
Company." That portion of said railroad which lies west
of the Susquehanna river, that is to say, between the City
of Baltimore and the Susquehanna river, lying partly in
Baltimore County, and partly in Harford County, and
being thirty-six miles in length, was made and constructed
(prior to the agreement of union of the 5th of February,
1838,) and was owned in severalty by the Baltimore and
Port Deposit Railroad Company.

That portion of said railroad which lies east of the Sus-
quehanna, and between the river and the divisional line
between the State of Delaware and the Commonwealth of
Pennsylvania, was made by the Wilmington and Susque-
hanna Railroad Company, and (prior to the said agreement
of union of the 5th of February, 1838,) was owned in
severalty by said last mentioned company, and of this,
eighteen and a half miles are within the State of Mary-
land, being between the Susquehanna river and the divi-
sional line between the States of Maryland and Delaware.

The defendant has, to the time of the passage of the
Act of 1872, ch. 234, paid taxes on its real property and
permanent, and fixed works in Baltimore City, and Balti-
more, Harford and Cecil Counties. The tax sought to be
imposed by the Act of 1872, ch. 234, that is on the gross
receipts of the defendant, is much larger than the tax on
property of said company, upon the basis of section 19 of
the Act of 1831, ch. 296, as applied to all that part of
said railroad within the limits of the State of Maryland,
on which basis the said Railroad Company had been pay-
ing State taxes before and at the time of the passing of
said Act of 1872, ch. 234. And the said tax of one-half
of one per cent. of the gross receipts of the defendant,
greatly exceeds in rate the Maryland State tax at the time
of passing the said Act of 1872, ch. 234, and since levied
by the general tax laws of Maryland on the property, real

and personal, of the citizens of said State, even if said tax of one-half of one per cent. is limited to the same proportion of said gross receipts, as the part of said road within the State of Maryland bears to the whole road. Under the last assessment made on the basis of the said section 19 of the Act of 1831, ch. 296, the whole amount of the property of the said Philadelphia, Wilmington and Baltimore R. R. Company in the State of Maryland, liable to taxation, was fixed at $999,939, on which the said Company has paid State, County and City taxes up to the year 1871 inclusive, and of said total assessment $371,120 was in Cecil County, being that part of the said road which originally constituted the Delaware and Maryland Railroad.

It was also agreed that the Court should enter judgment in both of the suits *pro forma,* for defendant; and judgment was so entered.

The cases were submitted to the Court without the intervention of the jury.

*Exception.*—The plaintiff prayed the Court to rule and decide as the law of the cases, as follows:

1. That on the pleadings and admitted facts in this cause, the defendant is not entitled to any exemption from the State tax in this suit claimed, by reason of anything in its charter contained.

2. That on the pleadings and admitted facts in this cause, the defendant is not entitled to any exemption from the State tax in this suit claimed, by reason of anything contained in any of the charters of the original companies, which by consolidation became the Wilmington and Susquehanna Railroad Company, or the Philadelphia, Wilmington and Baltimore Railroad Company.

3. That upon the pleadings and admitted facts in this cause, the defendant can only at most be entitled to a deduction from the gross amount of the taxes imposed by the Act of 1872, chapter 234, in proportion that the number

of miles of the Delaware and Maryland Railroad Company bears to the whole number of miles for which the taxes in this suit are claimed.

4. That upon the pleadings and admitted facts in this cause, the plaintiff is entitled to recover in this suit, upon a sum equivalent to that part of the gross receipts, which may be in the same proportion to the whole amount of gross receipts of the defendant on its entire road from Baltimore to Philadelphia, that the number of miles of the Baltimore and Port Deposit Railroad Company bears to the whole number of miles of the Philadelphia, Wilmington and Baltimore Railroad Company, of which it forms a part.

5. That the Act of Assembly of Maryland of 1872, ch. 234, does not impair the obligation of any contract between the State of Maryland and the defendant, within the meaning of the 10th section, Article 1, Constitution of the United States, and that for anything in the Constitution of the United States contained, the plaintiff is, under the admitted facts of this cause, entitled to recover the amount of taxes claimed in this suit.

6. That for anything in the Bill of Rights or Constitution of the State of Maryland contained, on the admitted facts in this suit, the plaintiff is entitled to recover the taxes claimed in this suit.

7. That the exemption of the shares of the capital stock of the Delaware and Maryland Railroad Company in its charter contained, did not exempt the property of said corporation from taxation, and that on the evidence the plaintiff is entitled to recover in this suit.

8. That the exemption in the charter of the Delaware and Maryland Railroad Company did not exempt the franchise of that corporation from taxation by the State, and that on the evidence the plaintiff is entitled to recover in this suit.

9. That the exemption of the shares of the capital stock of the Delaware and Maryland Railroad Company, from

the imposition of any tax or burthen, except on that portion of the permanent and fixed works of said company, which may be within the State of Maryland, and requiring that any tax which should thereafter be levied upon said section, should not exceed the rate of any general tax, which might at the same time be imposed upon similar real or personal property of this State, for State purposes, is in violation of the 15th Article of the Bill of Rights of Maryland, in force at the date of the passage of the Act of Assembly, granting the charter of said company, and void, and that notwithstanding said clause in said charter, the plaintiff is entitled to recover on the evidence in this suit.

10. That the defendant is not by its charter entitled to any exemption from taxation for State purposes, by reason of anything contained in the charter of the Delaware and Maryland Railroad Company, and that on the evidence the plaintiff is entitled to recover in this suit.

11. That the defendant is not exempt from taxation for State purposes by reason of anything in its charter contained, to a greater amount than the amount of shares of capital stock awarded under the articles of union for the Philadelphia, Wilmington and Baltimore Railroad Company to the Wilmington and Susquehanna Railroad Company, on account of that portion of the road of the said Wilmington and Susquehanna Railroad Company which was formerly owned by the Delaware and Maryland Railroad Company, and that after giving a proper credit on account of said stock last mentioned, the plaintiff is entitled to recover from the evidence in this suit.

12. That the tax imposed by the State, by the Act of 1872, ch. 234, on the gross receipts of said defendant, is a tax on the corporation measured by its gross receipts, and that on the evidence, the plaintiff is entitled to recover in this suit.

13. That the tax imposed by the Act of 1872, ch. 234, is an excise tax upon the business of the corporation, and

368 MARYLAND REPORTS.

State *vs.* Phil., Wilm. & Balt. R. R. Co.

on the evidence in this cause, the plaintiff is entitled to recover, notwithstanding anything in the Constitution of the United States, or the Constitution and Bill of Rights of Maryland, or the Acts of the General Assembly contained.

14. That the tax imposed by the Act of 1872, ch. 234, is a license tax for the privilege. of transacting business, and that on the evidence, the plaintiff is entitled to recover in this suit, notwithstanding anything in the Constitution of the United States, or the Constitution and Bill of Rights of Maryland, or the Acts of the General Assembly of Maryland contained.

And the defendant prayed the Court to rule as the law of the cases, as follows:

That the attempted imposition of the tax of one-half of one per cent. on the gross receipts of the defendant, by the Act of 1872, ch. 234, is in violation of the 15th Article of the Bill of Rights of the State of Maryland, and is therefore illegal, and under the facts agreed on in this case, the verdict and judgment of the Court must be for the defendant.

The Court, (DOBBIN, J.,) refused to grant the instructions asked by the plaintiff, but granted the instruction asked by the defendant. The plaintiff excepted and prosecuted these appeals.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER, ALVEY and ROBINSON, J.

*John H. Handy* and *Attorney General Gwinn,* for the appellant.

The Superior Court of Baltimore City was in error in granting the instruction asked for by the appellee. The shares of the Baltimore and Port Deposit Railroad Company were, under the Act of 1831, ch. 288, sec. 20, subject to taxation. The shares of the Delaware and Mary-

land Railroad Company ceased to exist when the Wilmington and Susquehanna Railroad was organized; and the exemption from taxation engrafted upon them by the Act of 1831, ch. 296, sec. 19, was not transferred to the shares of the Wilmington and Susquehanna Railroad Company. The Philadelphia, Wilmington and Baltimore Railroad Company, incorporated by Pennsylvania, enjoyed no exemption from taxation under the laws of this State. Therefore, when the Baltimore and Port Deposit Railroad Company, the Delaware and Maryland Railroad Company, and the Philadelphia, Wilmington and Baltimore Railroad Company, organized under the Act of 1837, ch. 30, the shares of the capital stock of the new company were not exempt from taxation. The Port Deposit Branch of the appellee has been subject to taxation since it was first built. It was subject to taxation not only because it was the property of the appellee—1853, ch. 138, sec. 8, 1853, ch. 411—but because its immunity from taxation, if any was granted by the Act of 1853, ch. 138, sec. 8, having been so granted when the Constitution of 1850, Article 3, section 47 was in force, was, under that provision, and under the Constitution of 1864, Article 3, section 51, repealable, and was repealed by the assessment Act of 1866, ch. 157, secs. 1 and 33, and by the Act of 1870, ch. 362. *County Commissioners vs. Franklin Railroad Co.*, 34 *Md.*, 161-163; *State vs. Northern Central Railroad Co.*, 44 *Md.*, 131. The whole stock of the appellee, or in any event the nineteen thousand shares thereof, assigned to the shareholders of the Baltimore and Port Deposit Railroad Company at the par value of fifty dollars per share, being subject to taxation, and the Act of 1872, ch. 234, being constitutional, *State vs. Northern Central Railway Co.*, 44 *Md.*, 131, the instruction asked by the appellee was erroneously granted.

The Superior Court was in error in refusing the first instruction asked for by the appellant, because, even if the

370 MARYLAND REPORTS.

State vs. Phil., Wilm. & Balt. R. R. Co.

stock of the appellee was wholly exempted from taxation, such privilege belonging exclusively to the stockholders, did not exempt the gross receipts of the company, which were its exclusive property, from taxation.

The Court was in error in rejecting the second instruction asked by the appellant, because the capital stock of the Wilmington and Susquehanna Railroad Company, and of the appellee was not exempted from taxation; and because, if it has been so exempted, the gross receipts of the appellee, would, nevertheless, under the Act of 1872, ch. 234, have been liable to taxation.

The Court was in error in refusing the fifth instruction asked by the appellant, because if the stock of the appellee in the hands of its stockholders was subject to taxation, and had not been taxed, the gross receipts in the possession of the company, were certainly subject to taxation under the Act of 1872, chap. 234; and such taxation did not impair the obligation of any contract within the meaning of Article 1, section 10, of the Constitution of the United States. And because, if the stock of the appellee, in the hands of its stockholders was exempted from taxation, the taxation of the gross receipts of the appellee, under the Act of 1872, chap. 234, while in its exclusive ownership, did not impair the obligation of any contract with the said stockholders, or with the appellee.

The Court was in error in refusing the sixth instruction asked by the appellant, because no contract was violated by imposing on the appellee the tax prescribed by the Act of 1872, ch. 234; and because there is no evidence in the record that the tax so imposed was greater than the amount, which would have been payable to the State, if the ordinary State tax had been imposed upon the stock of the appellee in the hands of the shareholders, which was, in fact, liable to taxation.

The Court was in error in rejecting the seventh instruction asked by the appellant, because the exemption of the

shares of stock of a corperation from taxation, does not exempt the property of such corporation from taxation.

The Court was in error in refusing the ninth instruction asked by the appellant, for the reason given in the instruction as prayed.

The Court was in error in refusing the tenth instruction asked for by the appellant, because the exemption from taxation, granted by the charter of the Delaware and Maryland Railroad Company, if ever valid, ceased to operate when that company was consolidated with the Wilmington and Susquehanna Railroad Company.

*Thomas Donaldson* and *I. Nevett Steele,* for the appellee.

Entirely admitting its liability to pay taxes to the State of Maryland, to the Counties through which it passes, and to the City of Baltimore, the appellee in these cases contends, that the Act of 1872, is in direct violation of its chartered rights, and of the contract made with it by the State in the Act of 1831, ch. 296, sec. 19, and in violation of the provisions of the 15th Article of the Bill of Rights, which secures equality in laying the burdens of taxation.

The part of the appellee included in the charter of the Delaware and Maryland R. R. Co., can only be taxed in the manner and on the basis set forth in the 19th sec. of 1831, ch. 296. So the Court of Appeals has explicitly decided in the case in 2 *Gill,* 355. See also 12 *G. & J.,* 117. And particular attention is called to the fact, that the decision in 2 *Gill,* declares the *profits* of the Delaware and Maryland road exempt from taxation. This being so, how can a tax on gross receipts, which include those profits, be sustained? It is true, that the 36 miles covered by the original charter of the Port Deposit Road, contained no such exemption; but how shall the receipts on those 36 miles be separated from the rest? And how shall the receipts on both these, being in Maryland, be separated

from the receipts of the whole road from Baltimore to Philadelphia? What warrant is there in the Act of 1872, to make such separation, if it were practicable? That Act levies a tax of one-half of one per cent. on the gross receipts of "all railroad companies worked by steam, incorporated by or under authority of the State, and doing business therein." What power would Court or jury have to make an apportionment, or to establish a rule by which such apportionment could be made?

An amendment Act was passed in 1874, ch. 408, which attempted to cure for the future, the defect in the Act of 1872, reserving the State's right under that former Act. The amendment Act provides, that the one-half of one per cent. tax shall be levied on such proportion of the gross receipts of a road partly in one State and partly in another, as the distance in Maryland bears to the whole length of the road. But this provision, does not surmount the difficulty. The gross receipts of a whole road lying in different States, cannot, with justice to the stockholders residing outside of the State levying a tax, be divided arbitrarily according to the miles in said State. Often, indeed generally, there are parts of a railroad which receive a much larger amount for freight and passengers, than other parts of no greater length; and an error in such arbitrary rule affects property and rights not within the limits of our State jurisdiction. Indeed, the receipts from every part of the whole road are the property of all the stockholders, and no part of said receipts can be taxed without taxing persons and property not within the limits of this State; and a great part of the sums received for freight and passengers on the road of the appellee, are actually received outside the State of Maryland, and a great part of the sums received within this State, is transportation in the States of Delaware and Pennsylvania. The only method of taxation which can avoid the difficulties in this case, is that which for so

long a series of years has been adopted in our State; that is to levy upon an assessment of the property of the company in every county and city of the State in which it has any property.

But even if there were no such provision as that cited from the Act of 1831, ch. 296, sec. 19, and even if the objections urged against an attempt to apportion a tax on receipts according to the number of miles within the State should not be deemed tenable, yet to levy a tax of one-half of one per cent. on the gross receipts of this company's road, even within the State of Maryland, would be a palpable violation of the 15th Article of the Bill of Rights. The admitted facts show, that such a tax is greatly in excess of the general tax on property in this State, whether we consider the assessed value of the company's property in the State, or the whole capital stock at its par value, and whether owned by residents of this State or not.

How can the owners of the property or of the capital stock of this company be taxed at double the rate which other property holders in the State pay upon their property? For whose protection was the 15th Article framed? Only for the owners of special classes of property? Is one who invests his money in a farm, in a house, or in a ship, guaranteed against paying a higher rate of tax than his neighbors, and must he, who for the same amount buys railroad stock, suffer without relief from whatever impost a Legislature chooses to inflict? Such a construction would make the Article a mere mockery.

The adoption of an arbitrary tax in particular instances, necessarily involves in principle the whole abuse against which the Bill of Rights was intended to protect all property. *Mayor, &c., of Balto. vs. B. & O. R. R. Co.*, 6 *Gill*, 288; *State vs. Cumb. & Penn. R. R. Co.*, 40 *Md.*, 22; *Maxwell vs. The State*, 40 *Md.*, 294.

But the counsel for the State contend, that the Legislature had no power to grant even the qualified exemption contained in the 19th section of the Act of 1831, ch. 296; although it is, of course conceded, that this Court has repeatedly decided the contrary, and that the Supreme Court of the United States has explicitly declared that a charter granted by a State Legislature, and accepted, is a contract which cannot be impaired by future Acts of the same Legislature, unless the right to appeal or amend has been reserved, or the State Constitution contains a prohibition against granting irrepealable rights.   The charters in question here, it must be remembered, were all granted before the Constitution of 1850 was adopted.   Judge COOLEY, in his work on Taxation, just issued, states this principle as perfectly settled, that an exemption from taxation contained in such a charter is a contract between the State and the corporation, which cannot be violated. *Cooley on Taxation*, 53, 145.

The counsel for the State also contend, that the exemption of the shares of the capital stock does not exempt any of the property of the corporation; indeed they go so far as to claim that both the whole capital stock and the whole property of a corporation may be taxed in Maryland. This, too, it is admitted, is directly contrary to repeated decisions of this Court, one of which was made as lately as 1873, in *State vs. Cumberland and Pa. R. R. Co.*, 40 *Md.*, 22; *See Gordon's Ex'r vs. Mayor, &c., of Baltimore*, 5 *Gill*, 236, *and Mayor, &c., of Balt. vs. Balt. & Ohio R. R. Co.*, 6 *Gill*, 294.

In addition to the Maryland decisions, which declare exemption of the capital stock to exempt the property of a corporation, it is proper to refer to the language employed in the very provision under discussion, (1831, ch. 296, sec. 19,) which demonstrates that the Legislature which chartered the Maryland and Delaware R. R. Co., held the same doctrine, and expressed the same meaning, in regard

to the capital stock representing all the property of the corporation. It says "*the capital stock*" "shall be exempt from the imposition of any tax or burthen by the State's assenting to this law, *except upon that portion of the permanent and fixed works of said company which may lie within the State of Maryland, &c.,*" thus treating the "permanent and fixed works" as included in the meaning of "*capital stock.*"

Not content with even thus doubling the burthen of taxation of those of our citizens, who have invested their means in the stock of railroad companies, it is further insisted by the State's counsel, that the franchise of the company can be taxed as such, (plaintiff's 8th prayer.) (In *Mayor, &c., of Balt. vs. B. & O. R. R.*, 6 *Gill*, 294-5—it is expressly decided that the *franchise* is part of the property of the corporation, and so is embraced in the valuation of its shares of stock,) that the corporation can be taxed by the measure of its gross receipts, (plaintiff's 12th prayer,) by an excise tax on its business, (plaintiff's 13th prayer,) and by a license for the privilege of transacting business, and using its own property, (plaintiff's 14th prayer.)

Would not every one of these impositions have the direct effect of diminishing the value of the stockholder's property, and of subtracting yearly from his income from that property? and what is the meaning of the whole charter of a railroad company, if it is not itself a license to build its works and to use its property for the transportation of passengers and freight? and after its charter has been granted, how can it be charged a price for permission to do the very things it had been authorized by its charter to do? and if the rate of all these various taxes may be arbitrarily fixed by the Legislature, what protection have the owners of this class of property from the provisions of the Bill of Rights, or from any part of the Constitution? They are left as completely open to oppression as if they

lived under an absolute monarchy, and as if their property were subject to benevolences, and to every other form of tyrannical exaction.

ROBINSON, J., delivered the opinion of the Court.

The main questions presented by this appeal are, first, whether the tax of one-half of one per centum upon the *gross receipts* of railroad companies, imposed by the Act of 1872, ch. 234, in lieu of all other taxes, is a valid exercise of Constitutional power? and secondly, if so, whether the defendant corporation is, by its charter, exempt from the payment of said tax?

The power of the Legislature to impose a tax of this character cannot be questioned, unless there is some provision in the Constitution prohibiting the exercise of such power.

A tax upon the gross receipts of railroad companies, it is contended, is an arbitrary tax upon property levied without regard to value, and not being imposed upon all property in the State, is in conflict with the Bill of Rights, which declares:

"That the levying of taxes by the poll is grievous and oppressive, and ought to be prohibited; that paupers ought not to be assessed for the support of the government; but every person in the State, or person holding property therein, ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in real or personal property; yet, fines, duties or taxes may properly and justly be imposed or laid, with a political view for the good government and benefit of the community." *Art.* 15, *Bill of Rights, Constitution of* 1867.

This Article in the Bill of Rights was not adopted for the first time by the Constitution of 1867; on the contrary, it is to be found word for word, in the Constitution of 1776, and in fact, in every Constitution adopted in this State from that time to the present, constituting thus a

part of the fundamental law of the State, for just *one hundred years*, and relating to a subject so vital and important,—the exercise of the power of levying taxes for the support of the government,—we might reasonably suppose by this time at least, its construction and meaning ought to be beyond all controversy ; and yet a law is seldom passed for the purpose of raising revenue, unless it be a direct assessment upon real or personal property, but what the tax thereby imposed, is claimed to be in conflict with this provision of the Constitution.

It can hardly be necessary to say, the Bill of Rights announced no new principle in regard to the exercise of the power of taxation, on the contrary, with a phraseology somewhat varied but unimportant, it is to be found in every standard work on the subject.

That every one should contribute his proportion of the public burdens, according to the measure of his ability, and that all taxes levied upon property for the support of the government, should so far as it is practicable, *be equal and uniform,* may be considered as a principle underlying the American system of taxation.   It was to give an authoritative recognition of a principle so just and impartial, and which challenges universal assent, that the framers of the Constitution of 1776, made it a part of the organic law of the State.   Having denounced the levying of taxes by the poll as grievous and oppressive, and recognizing property, as contra-distinguished from the person, to be the proper subject of taxation, they declared that every one ought to contribute his proportion of taxes according to the value of his property, and in order that every one should bear his just proportion and no more, it follows as a necessary corrollary that all taxes levied upon property, should be equal and uniform according to its actual value.   In other words, that the Legislature should not impose a tax upon the property of one person at one rate, and upon the property of another at a different rate.

But beyond this, it was not the purpose of the framers of the Constitution, nor of the people who adopted it, to restrict or limit the Legislature in the exercise of the power of taxation.

"The power of taxing the people and their property," say the Supreme Court, "is essential to the very existence of government and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against abuse of this power, is found in the structure of the government. In imposing a tax the Legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation." *Brown vs. McCullough*, 4 *Wheaton*, 429.

We must not forget too, that the Article in the Bill of Rights was first adopted in 1776, just after the beginning of the War for Independence. No human wisdom could foresee the result of that great contest, nor to what extent the necessities of the State might require the exercise of the power now under consideration, and we can hardly presume that the wise men who framed that instrument, intended to limit the power of the Legislature in regard to it beyond what they have plainly expressed. And in order to prevent any misconstruction, they declared that in addition to taxes upon property, *other taxes* might be levied "for the good government and benefit of the community."

Without extending this opinion by a review of the several cases, in which this Article of the Bill of Rights has been considered, it is sufficient to say, they go to the extent of holding, and no further, that when taxes are *laid directly upon property, they must be equal and uniform upon all property in the State.*

In the late case of *The State vs. The Cumberland and Pennsylvania Railroad Company*, 40 *Md.*, 22, a tax upon all coal mined in the State for transportation, was held by

a majority of this Court to be a direct tax on property, and not being imposed upon all property in the State it was declared to be in conflict with the Bill of Rights. The protection afforded by the Constitution, say the Court, "Consists in the equality and uniformity required, whereby one person shall not be taxed more nor less than another, because he may happen to own a different species of property from that owned by another."

The question then on this branch of the case resolves itself into this, is a tax upon the gross receipts of railroad companies in lieu of all other taxes to be paid by them, a direct tax upon the property of such companies, within the meaning of the Bill of Rights? We say it is not. It is neither levied upon the capital stock nor upon their property, in the sense in which the term property is used in the Constitution. Gross receipts, it is true, when received may be considered as the property of such companies, just as a person's income may be considered his property when paid to him. But it will hardly be contended, that an income tax is a direct tax upon property within the meaning of the Bill of Rights. Properly speaking, the tax is not imposed upon the gross receipts; they are referred to not as descriptive of the subject to be taxed, but merely as furnishing the basis of ascertaining the amount of tax to be paid. If then it is not a tax upon property, what is it? We say, it is a tax upon the *franchise* of railroad companies, measured by the extent of their business.

A franchise is a special privilege conferred by the State on certain persons, and which does not belong to them of common right, and although the franchises of a company may be considered in one sense property, and valuable property, yet they are not property in the meaning of that term, as used in the Bill of Rights.

That there is a wide distinction between a tax upon the franchises of a corporation, and a tax upon its property,

we think is fully sustained both upon principle and authority. In *Coite vs. The Society for Savings*, 32 *Connecticut*, 173, the defendant corporation had invested a large amount of its deposits in government securities, which were exempt from State taxation. The Legislature of that State imposed a tax of three-fourths of one per cent. on the total amount of deposits in such institutions, and it was held to be a tax upon the corporation, and not a tax upon its property. As a tax on property, it was admitted that the Act could not be sustained, because the property of the bank was invested in government securities. Mr. Justice McCURDY, in delivering the opinion of the Court, says: "The tax is not imposed on the securities but on the bank, and it is not imposed on the bank because of its holding the securities, but in consequence of its doing, under the favor of the State, certain business which that favor renders profitable. The tax is a payment for the benefit. The tax stands upon the same ground, as that collected of an insurance agent or an auctioneer, as before referred to."

The judgment in this case was affirmed by the Supreme Court of the United States. Mr. Justice CLIFFORD says:

"Nothing can be more certain in legal decision, than that the privileges and franchises of a private corporation, and all trades and avocations by which citizens acquire a livelihood, may be taxed by a State for the support of the State government." 6 *Wallace*, 625.

In the case of *The Commonwealth vs. Provident Institutions for Savings*, 12 *Allen*, 312, it was contended that a tax upon the deposits of Savings Banks, was unconstitutional because it was an arbitrary tax upon the property of a certain class of corporations only, and not laid uniformly upon all property in the State, but it was held by the Court to be a tax upon the *franchise of such corporations* and not upon *their property*. Upon appeal to the Supreme Court of the United States, the judgment in this case was also sustained. 6 *Wallace*, 630.

And coming down to the late case of the *Delaware Railroad Tax*, 18 *Wall.*, 206, we find that a tax imposed by the Legislature of Delaware, of one-fourth of one per cent. upon the actual cash value of every share of the capital stock of railroad companies, was held to be a tax upon *the corporation*, and not upon its *property*. In delivering the opinion of the Court, Mr. Justice FIELDS, says:

"The tax is neither imposed upon the shares of the individual stockholders, nor upon the property of the corporation, but is a tax upon the corporation itself, measured by a per centage upon the cash value of a certain proportional part of the shares of its capital stock.

Nor is there anything in the case of "*The State Tax on Railroad Gross Receipts*, 15 *Wall.*, 284, in conflict with these views. There it was contended, that a tax imposed by the Legislature of Pennsylvania upon the gross receipts of railroad companies, was a tax upon transportation, and therefore in conflict with the Constitution of the United States, which confers upon Congress the exclusive power to regulate inter-State commerce. And although the Court speaks of gross receipts when received by the company and mingled with its property, as property belonging to the company, yet we understand the Court as deciding the tax to be in fact levied " upon the railroad company, measured in amount by the extent of its business or the degree to which its franchise is exercised."

Being of opinion then, that the tax upon gross receipts of railroad companies, imposed by the Act of 1872, is a tax upon the franchise of such companies, and not upon their property, as that term is used in the .Bill of Rights, we come to the question whether the defendant corporation is exempt from the payment of said tax?

This corporation was formed by a union of the Baltimore and Port Deposit Company, extending from the City of Baltimore to the Susquehanna river, the Wilmington and Susquehanna Company, extending from said river to

the Delaware and Pennsylvania line, and the Philadelphia, Wilmington and Baltimore Company, extending from the Delaware line to Philadelphia, thus forming a continuous line from Baltimore to Philadelphia.

The Wilmington and Susquehanna Company was also formed, by the union of a company chartered by that name, by the State of Delaware, and the Delaware and Maryland Railroad Company, incorporated by this State, and running from the Susquehanna river to the Maryland and Delaware line. Sec. 19, of the Act of 1831; ch. 296, incorporating this latter company provided:

"That the said road or roads, with all their works, improvements and profits, and all the machinery of transportation used on said road, are hereby vested in said company,   *   *   and the shares of the capital stock of said company shall be deemed and considered personal estate, and shall be exempt from the imposition of any tax or burden by the State's assenting to this law, except upon that portion of the permanent and fixed works of said company, which may lie within the State of Maryland."

The purpose of the several Acts of the Legislature, under which these companies were united and the present defendant corporation formed, "was to vest in the new company the rights and privileges which the original companies possessed under their separate charters," that is to say, "the rights and privileges in Maryland, which the Maryland company had there enjoyed ; and not to transfer to either State and enforce therein the legislation of the other." *Delaware Railroad Tax Case,* 18 *Wall.,* 227 ; *Philadelphia, Wilmington and Baltimore R. R. Comp. vs. Maryland,* 10 *How.,* 377.

It is clear then, that by the consolidation of these companies, the qualified exemption granted by the Act of 1831 to the Delaware and Maryland Company, became vested in the new company, the present defendant corporation, and the question then is, whether under such exemp-

tion it is competent for the Legislature to impose a tax upon the gross receipts of that portion of its road which formerly constituted the Delaware and Maryland Company?

In a former part of this opinion, we have said that a tax upon the franchises of a company is not *a property tax* within the meaning of the Bill of Rights, which declares "that every person ought to contribute his proportion of taxes for the support of the government, according to his actual worth in real or personal property." Although this may be so, yet the franchise of a railroad company, namely, its right to maintain and operate its road and to receive fare for freight and passengers, may, in one sense, be considered property, and in the construction of an Act exempting the company from taxation, the immunity thereby granted may be held to include not only *its capital stock and tangible property* strictly speaking, but also *its franchises*, provided the language is such as to satisfy the Court the Legislature so intended.

In *Wilmington Railroad vs. Reid*, 13 *Wall.*, 264, where an Act provided, that all the property purchased and works constructed, and profits accruing on said works should be vested in the shareholders, and *that the property of said company* and *the shares therein, shall be held exempt from any public tax* or *charge*, it was held that the franchises of the company were also exempted.

Now the Act of 1831, declares that the road or roads *with all their works; improvements* and *profits, and machinery, &c.* are "hereby vested in *said company*, and the shares of the capital stock of *said company* shall be deemed and considered personal estate, and shall be exempt from the imposition of any tax or burthen, except the fixed and permanent works within the State."

Under this Act our predecessors, in the *Philadelphia, Wilmington and Baltimore Railroad Company vs. Bayless*, 2 *Gill*, 355, held, that the *capital stock of the company, its*

*works, improvements, machinery of transportation and profits*, except its fixed and permanent works within the State, were exempted from all taxation or levies, either for county or State purposes.

This decision was rendered in a case in which the present defendant corporation was a party, and upon the precise question now before us, and whatever may be our opinion in regard to the meaning of the Act of 1831, we are bound by the construction thus placed upon it. It can hardly be necessary to say, such an exemption of the capital stock and property and profits of a company, exempts also its franchises, because its profits are derived solely from the fare and tolls received from freight and passengers. Under the decision thus rendered by this Court, we are of opinion, that the Legislature has no power to tax the gross receipts of this part of the defendant's road.

There is no exemption from taxation in the charter of the Baltimore and Port Deposit Company, the only other portion of the road lying in this State, and the right of the Legislature to tax the gross receipts of this part of the road cannot be questioned.

The only remaining point then to be considered, is the apportionment of the gross receipts liable to taxation, under the Acts of 1872 and 1874, and in regard to this, we are of opinion, that upon the pleadings and admitted facts in this case, the State is entitled to recover a sum equivalent to that part of the gross receipts, which may be in the same proportion to the whole amount of gross receipts of the defendant, on its entire road from Baltimore to Philadelphia, that the number of miles of the Baltimore and Port Deposit Company bears to the whole number of miles of the Philadelphia, Wilmington and Baltimore Company, of which it forms a part. It is true, the gross receipts on one part of the road may be greater than on another, but perfect equality in the assessment and apportionment of taxes is unattainable, and the rule we have

adopted seems to be fair and reasonable. *Delaware Railroad Tax Case*, 18 *Wallace*, 208.

It follows from what we have said, that the Court erred in granting the defendant's prayer and in refusing the fourth, twelfth and thirteenth prayers of the plaintiff.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 23rd June, 1876.)

ALVEY, J., delivered the following dissenting opinion:

I dissent *in toto* from the opinion of the majority of the Court filed in this case; and while I shall refrain from a general discussion of the questions presented by the record, there is one fundamental question in regard to which I shall state briefly the grounds of my dissent.

That gross receipts of a railroad company, upon which the tax in this case was levied, under the Act of 1872, ch. 234, are not property, within the meaning and contemplation of the 15th Article of the Bill of Rights of this State, and may, therefore, be taxed without restriction, is a proposition to which I can never yield assent. What are such receipts if not personal property? And if personal property, upon what principle are they to be distinguished from other personal property within the meaning of the Bill of Rights? The rule of taxation as prescribed by the 15th Article of the Bill of Rights has reference to real and personal property, as those two well defined classes of property are known and understood, and makes no manner of distinction between the one species of real or the one species of personal property and another. Whatever falls within the one class or the other is within the letter, and also within the spirit and reason, of the provision of the Bill of Rights. To make distinction by construction, such as is made in this case, and thus withdraw property from the protection of the restriction imposed by the Article

referred to, is at once to break down and destroy the great safe-guard against arbitrary and capricious taxation. For what does it signify that the Legislature is restrained from imposing any other than an equal and uniform tax on the road-bed or rolling stock, with all other real and personal property of the State, if it can by taxing the gross receipts or earnings of that very property, actually empoverish the corporation? If the gross receipts are not within the protection of the Bill of Rights, then there is no restriction upon the power of taxation with respect to them. They are entirely subject to any arbitrary or capricious levies that the Legislature may think proper to make. And thus the most enterprising, industrious and adventurous portions of the community are liable to be made the victims of excessive taxation. For it is not confined to railroad companies, but all corporations, and even individuals, are liable to have their gross earnings taxed without limit or restriction, upon the same principle that the tax on gross receipts is supported in this case. And so, by construction, the great fundamental rule which has existed as a part of the Constitution from the foundation of the State, requiring equality and uniformity in the imposition of taxes, becomes a mere platitude, without force or meaning, only requiring a little device on the part of the Legislature to evade all the restriction that its language imports.

I certainly know of no case that decides that the gross receipts or earnings of a corporation are not property, in the strictest sense of the term. On the contrary, according to my reading of the cases, they all concede that such receipts are property of the corporation, as much so as anything else owned by it. Such was certainly conceded and declared in the case of the *State Tax on Railway Gross Receipts*, 15 *Wall.*, 284. In that case, the Supreme Court, in speaking of the tax and upon what it was imposed, said: " The tax is laid upon the gross receipts

of the company; laid upon a fund which has become the property of the company, mingled with its other property, and possibly expended in improvements or put out at interest. The statute does not look beyond the corporation to those who may have contributed to its treasury. The tax is not levied, and, indeed, such a tax cannot be, until the expiration of each half-year, and until the money received for freights, and from other sources of income, has actually come into the company's hands. Then it has lost its distinctive character as freight earned, by having become incorporated into the general mass of the company's property." And in the case of this very corporation against *Bayless*, 2 *Gill*, 355, the *profits* of the road, received in respect to that portion of it lying between the Susquehanna river and the Delaware State line, were held by the Court of Appeals to be part of the property of the corporation, and therefore embraced by the exemption of the shares of the capital stock from taxation; and it is a little difficult to understand how the decision of that case can be reconciled with the decision of the present.

Nor can I assent to the proposition that this tax is to be regarded as a tax on the franchise or business of the corporation, measured by the amount of its gross receipts, and therefore not within the restriction imposed by the 15th Article of the Bill of Rights. The tax, by the very terms of the law, is "levied annually *upon* the gross receipts of all railroad companies worked by steam." It is, therefore, a specific levy upon the particular fund, requiring a certain proportion of it to be paid over to the State. But if the terms of the law were different, I utterly deny that the State has power, under the Bill of Rights, to impose an arbitrary tax, without reference to value, and uniformity of assessment with other property of the State, on the franchise of the corporation. The franchise of the corporation is not only property, but is property of the most valuable kind, essential to the very

existence of the corporation itself.  If we were without authority in our own Courts, the language of the Supreme Court of the United States, in the case of the *Wilmington R. Co. vs. Reid,* 13 *Wall.,* 264, is very explicit on this point.  It was there insisted that the franchise was something entirely distinct from the property of the corporation, and that the Legislature, while it was restrained from taxing the property was not inhibited from taxing the franchise.  But the Court said that that position was equally unsound with the others taken in the case.  Nothing, say the Court, "is better settled than that the franchise of a private corporation—which in its application to a railroad is the privilege of running it and taking fare and freight—is property, and of the most valuable kind, as it cannot be taken for public use even without compensation.  It is true, it is not the same sort of property as the rolling stock, road-bed, and depot grounds, but it is equally with them covered by the general term 'the property of the company,' and, therefore, equally within the protection of the charter."    And in this State, a franchise has been declared, in the most unequivocal terms, to be property within the meaning of the 15th Article of the Bill of Rights.    *Mayor & City Council of Balto. vs. Balto. & Ohio R. Co.,* 6 *Gill,* 288.

As it is apparent that the State tax attempted to be collected from the appellee, under the Act of 1872, ch. 234, imposing a tax of one-half of one per cent. on the gross receipts of the company, far exceeds the rate of taxation imposed on the other real and personal property of the State, I think such tax invalid, and that the judgment of the Court below ought to be affirmed.