## STATE TAX ON RAILWAY GROSS RECEIPTS.

### [READING RAILROAD COMPANY v. PENNSYLVANIA.]

1. A statute of a State imposing a tax upon the gross receipts of railroad companies is not repugnant to the Constitution of the United States, though the gross receipts are made up in part from freights received for transportation of merchandise from the State to another State, or into the State from another.
2. Such a tax is not a regulation of interstate commerce.
3. Nor is it a tax on imports or exports.
4. Nor is it a tax upon interstate transportation.
5. A distinction made between a tax upon freights carried between States, because of their carriage, and a tax upon the fruits of such transportation after they have become intermingled with the other property of the carrier.

ERROR to the Supreme Court of Pennsylvania; the case being thus:

By an act of the legislature of Pennsylvania, passed on the 23d day of February, 1866, entitled "An act to amend the revenue laws of the Commonwealth," a tax was imposed upon the gross receipts of certain companies. The second section was as follows:

"In addition to the taxes now provided by law, every railroad, canal, and transportation company incorporated under the laws of this Commonwealth, and not liable to the tax upon income under existing laws, shall pay to the Commonwealth a tax of three-fourths of one per centum upon the gross receipts of said company; the said tax shall be paid semi-annually upon the first days of July and January, commencing on the first day of July, 1866; and for the purpose of ascertaining the amount of the same, it shall be the duty of the treasurer, or other proper officer of said company, to transmit to the auditor-general a statement, under oath or affirmation, of the amount of gross receipts of the said company during the preceding six months; and if such company shall refuse, or fail, for a period of thirty days after such tax becomes due, to make said return, or to pay the same, the amount thereof, with an addition of ten per centum

thereto, shall be collected for the use of the Commonwealth, as other taxes are recoverable by law from said companies."

Under this statute the accounting officers of Pennsylvania stated an account between the Commonwealth and the Reading Railroad Company, for tax on the gross receipts of the company, for the half year ending December 31st, 1867. The company, as stated in a preceding case,* was a corporation created by the State of Pennsylvania. Its road was between Philadelphia and the coal regions of Pennsylvania, and one large source of the company's profit was the transportation on the road of coal from the coal regions to a place near Philadelphia, called Port Richmond, or to the Schuylkill Canal, from both which places most of it went to States other than Pennsylvania.

The account, as stated by the accounting officers of the Commonwealth, was based on returns made by the company, which discriminated between receipts from freight transported to points within, and receipts from freight exported to points without, the State of Pennsylvania. The latter were returned under protest against their liability to taxation, and the tax assessed against *these* receipts made the subject of the present controversy. The company, in refusing to pay, alleged that the act of February 23d, 1866—so far as it taxed that portion of the gross receipts which were derived from transportation from the State to another State, or into the State from another,—was unconstitutional and void, because, among other reasons, it was in conflict with the fourth paragraph of the eighth section of the first article of the Constitution of the United States, which ordains that—

"Congress shall have power to regulate commerce with foreign nations and among the several States."

And with the second paragraph of the tenth section of the same article, which ordains that—

"No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

---

* See *supra*, 234.

The Supreme Court of Pennsylvania adjudged that the act was not in conflict with either of the clauses of the Constitution relied on; and to this, its judgment, the present writ of error was taken.

*Messrs. James E. Gowen and R. A. Lamberton, for the plaintiff in error:*

We assume that the position taken by us in the case of *The State Freight Tax*[*]—the position, namely, that a State tax upon freight generally is unconstitutional, as applied to the transportation of merchandise from one State to another—will be sustained by the judgment of this court. Setting out, then, as with a postulate, that *such* a tax is unconstitutional, we say:

1st. *There is no difference, in principle, between a freight tax regulated by reference to the articles transported and such a tax levied in the shape of a percentage of the money received for transportation.*

Is it not unreasonable to say that a tax of two cents per ton on the transportation of coal is unconstitutional, and yet that a tax of one per cent. on every two dollars (or two cents) paid for the transportation of coal is constitutional? If State taxation of interstate commerce is forbidden, a tax on the transportation of a ton of freight from one State to another must be equally illegal, whether the sum to be paid is specially mentioned or is left to be ascertained by a simple arithmetical calculation. The great object of the constitutional provision giving Congress the power to regulate commerce between the States was to prevent the States from embarrassing the intercourse which was intended should freely exist between these bodies, designed to be united for many purposes into one nation, with equal rights and privileges conferred upon all. If any one could tax the commodities carried it could exclude their passage through the State or across its lines. Is not a tax imposed on the amount

---

[*] *Supra*, 237–245. The case had just been argued.

of freight received by a transportation company the same in effect as one charged against the article carried? If the State can charge three-fourths of one per cent. on the money paid for freight, it can charge fifty per cent. on all money received, and although it can undoubtedly tax its own citizens who are represented in its legislative bodies to any extent that the law-makers may see proper, it cannot thus increase the price of transportation to the people of other States.

2d. *A tax upon the gross receipts of a transportation company is necessarily a tax upon transportation.*

In the *Bank of Commerce* v. *The Commissioners of Taxes*,[*] it was held that Federal securities held by a bank in New York, as part of the bank's capital, could not be constitutionally taxed under a law of that State which took the actual value of the entire capital stock as the basis of taxation, although it was strongly urged that the Federal securities were not specifically and *eo nomine* taxed; that no discrimination was made between them and other property; and that, in fact, the tax was upon the aggregate value of the property of the bank, irrespective of the character of the component parts of that property. This court, however, unanimously refused to admit that the law of New York did not tax Federal loans, because the tax was imposed indiscriminately upon all the property of the bank.

So a tax upon the gross receipts of a company is, necessarily, a tax upon its receipts from transportation, or any other source; but, when the company is a transportation company, and the tax is chargeable upon the gross receipts of transportation companies only, it is plain that the tax was practically intended to be a tax on gross receipts from transportation, and on nothing else. The gross receipts of a transportation company must, in nearly every case, be receipts from transportation alone.

The *Bank Tax Case*[†] was but an affirmance of the principle on which the case we refer to was ruled. It was there

---

[*] 2 Black, 620.                    [†] 2 Wallace, 200.

held that a tax on *a valuation equal to the amount of the capital stock of a bank, paid in, or secured to be paid in*, was really and substantially a tax upon that portion of the capital stock which consisted of the loans of the United States, notwithstanding it was strenuously urged that the tax was the same, in substance, as a tax of a specific sum upon the franchises and privileges of the bank, irrespective of the character of its investments, or, to use the language of Denio, C. J., in *Utica* v. *Churchill*,* a tax " like that annexed to the franchise as a royalty for the grant," and notwithstanding the form of the tax appears to have been specially devised to obviate the objections sustained in the case of *The Bank of Commerce* v. *The Commissioners.*

*Messrs. F. Carroll Brewster and Lewis Waln Smith, contra:*

Even if we conceded, which we do not, the unconstitutionality of the tax on freight generally—the matter just now argued in the preceding case—the unconstitutionality of the tax on gross receipts generally by no means follows.

*First. The tax of three-fourths of one per cent. on all gross receipts of a transportation company is not a tax on property, but on the franchises of the corporation.*

This question came before this court in the case of the *Society for Savings* v. *Coite*,† and in *Provident Institution* v. *Massachusetts*.‡ The identity between the taxes there and the one here, so far as the effect on the corporations was concerned, will be noticed at once. The tax being, therefore, on the franchises of the corporation, and not on the property, it is clearly not included in the prohibited regulation of commerce, even according to the pretensions of the plaintiffs in error.

*Second. Even if the tax on gross receipts be considered as a tax on property, it is still constitutional, or within the power of the State so to tax it.*

In *Woodruff* v. *Parham*,§ the State levied a tax on the

---

* 33 New York, 240.   † 6 Wallace, 594.   ‡ Ib. 611.   § 8 Wallace, 123.

gross sales of an auctioneer.  He set up that these sales, which were of goods in unbroken packages from other States, were exempt.  The court decided they were taxable.  To the same effect is *Hinson* v. *Lott.** These cases establish this, as far as adjudication can establish anything, that the States have a right to tax the gross receipts of a citizen transacting business, be the receipts derived from what source soever, and that such a tax is not unconstitutional, provided that the tax does not institute any discrimination against non-residents.

If constitutional, it is not necessary for us to explain why the Commonwealth of Pennsylvania has seen fit to levy, in regard to some corporations in her borders, a tax on gross receipts rather than on something else for which she might have taxed them, yet, as showing the propriety of this sort of tax, sometimes, we may, perhaps, take the freedom to say a word further to the court on this subject.

The greater portion of the revenues of Pennsylvania are derived from the taxes levied on corporations.  There are various forms of these taxes.  In some cases they are levied on the capital stock; in most, perhaps, on net earnings, or income.  The Commonwealth adapts the form of the tax to the particular kind of corporation, so that its collection can be facilitated.  Experience has shown her that it is better to charge a mining company a large percentage, as three per cent. on net earnings, and to charge a railroad company a small one, as three-fourths of one per cent., on gross receipts.  The reason why the gross receipts are selected as a basis of taxation of a railroad company, was doubtless because the State found that a large number of railroads were expending their receipts in improvements, and charging these as expenses.  The cost of every improvement was deducted from the "net earnings," and while thus enriching themselves the railroad companies were avoiding taxation.  The State, therefore, takes a low percentage on the gross receipts of railroads, and taxes them, whether they are expended in improve-

* 8 Wallace, 148.

ments or declared as a dividend. Such a course is both just to the corporation, and politic on the part of the State.

*Reply:* There is nothing in *The Society for Savings* v. *Coite*, to indicate that the court meant to question the authority of the cases which we have cited from 2d Black and 2d Wallace. It was held in *The Society for Savings* v. *Coite*, that a statute of a State requiring savings societies authorized to receive deposits, but without authority to issue bills, and *having no capital stock or stockholders*, to pay annually into the State treasury a sum equal to three-fourths of one per cent. on the total amount of their deposits on a given day, imposes a franchise tax, not a tax on property.

The court, while admitting that the tax would have been unconstitutional, as to deposits invested in Federal securities—if it could be considered a tax on the property represented by such securities—held, that it was not a tax on the property, but on the franchises or privileges of the defendant corporation. The facts of the corporation having no capital stock (its charter authorizing it to improve deposits for the benefit of its depositors), of its investments really belonging to its depositors, and of the tax being assessed not upon the actual value of the deposits, were all considered as showing that the tax was not imposed on the property, but on the functions, franchises, or corporate privileges of the defendant.

The succeeding case of *The Provident Institution* v. *Massachusetts*, is to the same effect.

Neither tends to prove that a tax on the gross receipts of a transportation company is not a tax upon transportation, nor that a tax upon interstate transportation is not a tax upon, and a regulation of, interstate commerce.

That the tax upon the gross receipts of railroad, canal, and transportation companies, imposed by the Pennsylvania statute, was intended to be a tax upon their franchises, can hardly be asserted in face of the fact that most other incorporated companies in the State are taxed, confessedly, upon their net earnings or income. The value of a franchise

depends upon the profit derived from it; and the gross receipts of a railroad or canal company are not the measure of the profit made. But, in truth, the question is not, whether a tax which is alleged to operate as a regulation of commerce between the States or with foreign nations, is or is not a tax upon persons, property, trades or occupations, but whether it does really operate as a regulation of such commerce; since it is practically impossible for any State to collect a tax except from persons or property within her territory. It was contended that the tax upon importers in *Brown* v. *Maryland*,[*] was not a tax upon imports, but upon a business or occupation carried on in Maryland; that the tax on bills of lading in *Almy* v. *California*,[†] was a stamp tax, and not a duty on exports; and it might have been, and probably was, urged in *Hays* v. *The Pacific Mail Steamship Company*,[‡] that the State of California had an undoubted right to tax ships as well as all other property within her territory. In *Crandall* v. *Nevada*,[§] the tax chargeable against the carriers of passengers leaving the State was defended as a tax upon the business of carriers within the State.

When the court decided, in *The Savings Society* v. *Coite*, and in *The Provident Institution* v. *Massachusetts*, that the taxes there in question were charged upon the business of the corporation, and not upon their property, the unexpressed premise of the argument no doubt was, that such taxes did not practically interfere with the power of the United States to borrow money; just as in *Nathan* v. *Louisiana*,[||] a State tax on exchange and money brokers was held not to interfere with the power of Congress to regulate commerce. "Under the law," said McLean, J., in the last-mentioned case, " every person is free to buy or sell bills of exchange as may be necessary in his business transactions, but he is required to pay the tax if he engages in the business of a money or exchange broker." But can it be said that the power of Congress to regulate commerce between the States, and its actual regulation of it by leaving it free

---

* 12 Wheaton, 419.     † 24 Howard, 169.     ‡ 17 Id. 596.
§ 6 Wallace, 36.     || 8 Howard, 73.

and unrestricted, are not interfered with by a State regulation which exacts a certain sum for every passenger and every bale of goods that cross her boundary? or can it be reasonably said that every person is free to pass or repass, or to send his goods, without being taxed, provided he does not use the railroads or canals of the State?

Mr. Justice STRONG delivered the opinion of the court.

The question is whether the act of the legislature of Pennsylvania passed February 23d, 1866, under which a tax was levied upon the Philadelphia and Reading Railroad Company of three-quarters of one per cent. upon the gross receipts of the company, during the six months ending December 31st, 1867, is in conflict with the third clause of the eighth section, article first, of the Constitution of the United States, which confers upon Congress power to "regulate commerce with foreign nations, and among the several States, and with the Indian tribes;" or whether it is in conflict with the second clause of the tenth section of the same article, which prohibits the States, "without the consent of Congress, from laying any imposts or duties on imports or exports, except what may be absolutely necessary for executing their inspection laws." It was claimed in the State courts that the act is unconstitutional so far as it taxes that portion of the gross receipts of companies which are derived from transportation from the State to another State, or into the State from another, and the Supreme Court of the State having decided adversely to the claim, the case has been brought here for review.

We have recently decided in another case between the parties to the present suit, that freight transported from State to State is not subject to State taxation, because thus transported. Such a burden we regard as an invasion of the domain of Federal power, a regulation of interstate commerce, which Congress only can make. If then a tax upon the gross receipts of a railroad, or a canal company, derived in part from the carriage of goods from one State to another is to be regarded as a tax upon interstate trans-

portation, the question before us is already decided.   The answer which must be given to it depends upon the prior question, whether a tax upon gross receipts of a transportation company is a tax upon commerce, so far as that commerce consists in moving goods or passengers across State lines.   No doubt every tax upon personal property, or upon occupations, business, or franchises, affects more or less the subjects, and the operations of commerce.   Yet it is not everything that affects commerce that amounts to a regulation of it, within the meaning of the Constitution.   We think it may safely be asserted that the States have authority to tax the estate, real and personal, of all their corporations, including carrying companies, precisely as they may tax similar property when belonging to natural persons, and to the same extent.   We think also that such taxation may be laid upon a valuation, or may be an excise, and that in exacting an excise tax from their corporations, the States are not obliged to impose a fixed sum upon the franchises or upon the value of them, but they may demand a graduated contribution, proportioned either to the value of the privileges granted, or to the extent of their exercise, or to the results of such exercise.   No mode of effecting this, and no forms of expression which have not a meaning beyond this can be regarded as violating the Constitution.   A power to tax to this extent may be essential to the healthy existence of the State governments, and the Federal Constitution ought not to be so construed as to impair, much less destroy, anything that is necessary to their efficient existence. But, on the other hand, the rightful powers of the National government must be defended against invasion from any quarter, and if it be, as we have seen, that a tax on goods and commodities transported into a State, or out of it, or a tax upon the owner of such goods for the right thus to transport them, is a regulation of interstate commerce, such as is exclusively within the province of Congress, it is, as we have shown in the former case, inhibited by the Constitution.

Is, then, the tax, imposed by the act of February 23d,

1866, a tax upon freight transported into, or out of, the State, or upon the owner of freight, for the right of thus transporting it? Certainly it is not directly. Very manifestly it is a tax upon the railroad company, measured in amount by the extent of its business, or the degree to which its franchise is exercised. That its ultimate effect may be to increase the cost of transportation must be admitted. So it must be admitted that a tax upon any article of personal property, that may become a subject of commerce, or upon any instrument of commerce, affects commerce itself. If the tax be upon the instrument, such as a stage-coach, a railroad car, or a canal, or steamboat, its tendency is to increase the cost of transportation. Still it is not a tax upon transportation, or upon commerce, and it has never been seriously doubted that such a tax may be laid. A tax upon landlords as such affects rents, and generally increases them, but it would be a misnomer to call it a tax upon tenants. A tax upon the occupation of a physician or an attorney, measured by the income of his profession, or upon a banker, graduated according to the amount of his discounts or deposits, will hardly be claimed to be a tax on his patients, clients, or customers, though the burden ultimately falls upon them. It is not their money which is taken by the government. The law exacts nothing from them. But when, as in the other case between these parties, a company is made an instrument by the laws to collect the tax from transporters, when the statute plainly contemplates that the contribution is to come from them, it may properly be said they are the persons charged. Such is not this case. The tax is laid upon the gross receipts of the company; laid upon a fund which has become the property of the company, mingled with its other property, and possibly expended in improvements or put out at interest. The statute does not look beyond the corporation to those who may have contributed to its treasury. The tax is not levied, and, indeed such a tax cannot be, until the expiration of each half-year, and until the money received for freights, and from other sources of income, has actually come into the company's

hands. Then it has lost its distinctive character as freight earned, by having become incorporated into the general mass of the company's property. While it must be conceded that a tax upon interstate transportation is invalid, there seems to be no stronger reason for denying the power of a State to tax the fruits of such transportation after they have become intermingled with the general property of the carrier, than there is for denying her power to tax goods which have been imported, after their original packages have been broken, and after they have been mixed with the mass of personal property in the country. That such a tax is not unwarranted is plain. Thus, in *Brown* v. *Maryland*,* where it was ruled that a State tax cannot be levied, by the requisition of a license, upon importers of foreign goods by the bale or package, or upon other persons selling the same by bale or package, Chief Justice Marshall, considering the dividing line between the prohibition upon the States against taxing imports and their general power to tax persons and property within their limits, said that "when the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State." This distinction in the liabilities of property in its different stages has ever since been recognized.† It is most important to the States that it should be. And yet if the States may tax at pleasure imported goods, so soon as the importer has broken the original packages, and made the first sale, it is obvious the tax will obstruct importation quite as much as would an equal impost upon the unbroken packages before they have gone into the markets. And this is so, though no discrimination be made.

There certainly is a line which separates that power of the Federal government to regulate commerce among the

---

* 12 Wheaton, 419–441.

† Waring v. The Mayor, 8 Wallace, 122; Pervear v. The Commonwealth, 5 Id. 479.

States, which is exclusive, from the authority of the States to tax persons' property, business, or occupations, within their limits. This line is sometimes difficult to define with distinctness. It is so in the present case; but we think it may safely be laid down that the gross receipts of railroad or canal companies, after they have reached the treasury of the carriers, though they may have been derived in part from transportation of freight between States, have become subject to legitimate taxation. It is not denied that net earnings of such corporations are taxable by State authority without any inquiry after their sources, and it is difficult to state any well-founded distinction between the lawfulness of a tax upon them and that of a tax upon gross receipts, or between the effects they work upon commerce, except perhaps in degree. They may both come from charges made for transporting freight or passengers between the States, or out of exactions from the freight itself. Net earnings are a part of the gross receipts.

There is another view of this case to which brief reference may be made. It is not to be questioned that the States may tax the franchises of companies created by them, and that the tax may be proportioned either to the value of a franchise granted, or to the extent of its exercise; nor is it deniable that gross receipts may be a measure of proximate value, or, if not, at least of the extent of enjoyment. If the tax be, in fact, laid upon the companies, adopting such a measure imposes no greater burden upon any freight or business from which the receipts come than would an equal tax laid upon a direct valuation of the franchise. In both cases, the necessity of higher charges to meet the exaction is the same.

Influenced by these considerations, we hold that the act of the legislature of the State imposing a tax upon the plaintiffs in error equal to three-quarters of one per cent. of their gross receipts is not invalid because in conflict with the power of Congress to regulate commerce among the States. And under the decision made in *Woodruff* v. *Par-*

*ham*,\* it is not invalid because it lays an impost or duty on imports or exports.

JUDGMENT AFFIRMED.

Mr. Justice MILLER (with whom concurred Justices FIELD and HUNT), dissenting.

The principles announced in the case of the tax on the ton of freight, and the argument by which those principles are supported, meet my full approval. They lie at the foundation of our present Federal Constitution. The burdens which States, possessed of safe and commodious harbors, imposed by way of taxes called imposts upon the transit of merchandise through those ports to their destination for consumption in other States, were the cause as much as any one class of grievances of the formation of that Constitution; and the reluctance of the little State of Rhode Island to give up the tax which she thus levied on the commerce of her sister States through the harbor of Newport, then the largest importing place in the Union, was the reason that she refused for nearly two years to ratify that instrument.

The clauses of the Constitution which forbid the States to levy duties on imports, and which gave to Congress the right to regulate commerce, were designed to remedy that evil, and have always been supposed to be sufficient for that purpose. The one is the complement of the other, and something more. The first forbids the States to levy the tax on goods imported from abroad. The second places the entire control of commerce, with the exception of such as may be begun and completed within a single State, under the control of Congress. That commerce which is carried on with foreigners, or with the Indian tribes, or between citizens of different States, is under the jurisdiction of the General Government.

The opinion which affirms the tax of so much per ton on

---

\* 8 Wallace, 123.

freight carried from one State to another to be a tax upon transportation, and therefore a regulation of the commerce among the several States forbidden by the Constitution, receives the approbation of all the members of this court except two.   And it is there declared that any tax upon the freight so transported, or upon the carrier on account of such transportation, is within the prohibition.

Is the tax in the *present* case also within the evil intended to be remedied by the commerce clause of the Constitution?

It seems to me that to hold that the tax on freight is within it, and that on gross receipts arising from such transportation is not, is " to keep the word of promise to the ear and break it to the hope."   If the State of Pennsylvania, availing herself of her central position across the great line of necessary commercial intercourse between the east and the west, and of the fact that all the ways of land and water carriage must go through her territory, is determined to support her government and pay off her debt by a tax on this commerce, it is of small moment that we say she cannot tax the goods so transported, but may tax every dollar paid for such transportation.   Her tax by the ton being declared void, she has only to effect her purpose by increasing correspondingly her tax on gross receipts.   In either event the tax is one for the privilege of transportation within her borders; in either case the tax is one on transportation.

That the tax on gross receipts comes not only ultimately, and in some remote way, but directly out of the freight transported, it is hardly worth while to argue.   The railroad company makes precisely the same calculation in making its business profitable in relation to the cost and expenses of transportation, and the price to be demanded for it, in regard to this tax, that it does in reference to the tax on the ton of freight, and it imposes this additional burden for the benefit of the State in fixing the price of transportation.

The tax does not depend on the profits of the companies. It is the same whether the profits or the losses preponderate in a given year.   A road may do a large carrying trade at a loss, but the State says, nevertheless, " for every dollar that

you receive for transportation I claim one cent or half a cent."

It is conceded that railroads may be taxed as other corporations are taxed on their capital stock, on their property, real and personal, and in any other way that does not impose necessarily a burden on transportation between one State and another. But a railroad or canal company differs from corporations for banking, insurance, or manufacturing purposes in this, that while their business is only remotely, or incidentally, connected with commerce, *the business of roads and canals, namely, transportation of persons and property, is itself commerce.* So much of said commerce as is exclusively within the State is subject to its regulations by taxation or otherwise, but that which carries goods from or to another State is exempted by the Constitution from its control.

*I lay down the broad proposition that by no device or evasion, by no form of statutory words, can a State compel citizens of other States to pay to it a tax, contribution, or toll, for the privilege of having their goods transported through that State by the ordinary channels of commerce.* And that this was the purpose of the framers of our Constitution I have no doubt; and I have just as little doubt that the full recognition of this principle is essential to the harmonious future of this country now, as it was then. The internal commerce of that day was of small importance, and the foreign was considered as of great consequence. But both were placed beyond the power of the States to control. The interstate commerce to-day far exceeds in value that which is foreign, and it is of immense importance that it should not be shackled by restrictions imposed by any State in order to place on others the burden of supporting its own government, as was done in the days of the helpless Confederation.

I think the tax on gross receipts is a violation of the Federal Constitution, and therefore void.