# Philadelphia and Southern Mail Steamship Company *versus* Commonwealth.

1. A steamship company incorporated in Pennsylvania and engaged in the business of transporting freight and passengers between ports in the United States, and between such ports and foreign countries, is liable, as to its receipts from ocean freight in the foreign and inter-State trade, to the tax on gross receipts imposed by the Acts of Assembly of March 20th 1877 (P. L. 6), and June 7th 1879 (P. L. 112).

2. Those Acts are not, in respect to such tax, in contravention of Art. I. section 8 of the Constitution of the United States, which confers upon Congress power to regulate commerce with foreign nations, and among he several States.

June 1st 1883.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Dauphin county :* Of May Term 1883, No. 17.

This was, in the court below, an action of debt by the Commonwealth against the Philadelphia and Southern Mail Steamship Company, and an appeal by said corporation from a settlement made by the Auditor-General and State Treasurer, charging said company with tax on its gross receipts for the period from January 1st 1877 to June 20th 1881, under the Acts of March 20th 1877 and June 7th 1879.

A narr. was filed in the common counts in debt, and a special plea, setting out the following facts, which, by writing filed, it was agreed should be treated as proven :

The Philadelphia and Southern Mail Steamship Company is a corporation created by the Commonwealth of Pennsylvania, having its principal place of business in the city of Philadelphia. The said company was the owner of sea-going steamships, operated during the years 1877, 1878, 1879, 1880 and 1881, in the coasting trade of the United States, between the port of Philadelphia and the city of Savannah, in the state of Georgia ; and in the foreign trade between the ports of New Orleans, Havana (in the Island of Cuba), and Vera Cruz (Mexico) ; the vessels on the latter voyages touching at Key West, Florida ; and that the said vessels were from time to time hired and chartered to other parties who paid to the

[Philadelphia, &c. Steamship Co. *v.* Commonwealth.]

defendants a certain price for the hire and charter of the said vessels, paying, victualling and manning the same at the expense of the charterers.

All the said voyages were conducted on the ocean and navigable waters of the United States, and the said vessels were at all times duly enrolled or registered under the navigation laws of the United States.

During the said years the gross receipts of said company were received for the transportation of freight and passengers between different States of the United States, and between ports in the United States and foreign countries, and no part of the said receipts were derived from transportation of freight and passengers within the state of Pennsylvania.

The gross receipts of the said company, as returned to the Auditor-General of the Commonwealth, were derived from the following sources:

|  |  |  |
|---|---|---|
| In 1877, from freight and passage money between the port of Philadelphia and the city of Savannah, | $138,815 49 | |
| Do. in foreign trade from New Orleans, | 16,774 55 | |
| Charter parties, | 6,750 00 | |
| | | $162,340 04 |
| In 1878, Savannah trade, | $146,391 23 | |
| Foreign trade from New Orleans, | 54,721 37 | |
| Charter parties, | 3,367 82 | |
| | | $204,480 42 |
| In 1879, Savannah trade, | $150,650 27 | |
| Foreign trade from New Orleans, | 45,844 13 | |
| Charter parties, | 1,131 24 | |
| | | $197,625 64 |
| In 1880, Savannah trade, | $207,489 47 | |
| Foreign trade, | 18,623 62 | |
| Charter parties, | 3,850,00 | |
| | | $229,963 09 |
| In 1881, Savannah trade, | $13,561 30 | |
| Charter parties, | 8,377 20 | |
| | | $21,938 50 |
| So that the receipts from interstate commerce between Philadelphia and Savannah were | $656,907 76 | |
| In the foreign trade from New Orleans, | 135,963 67 | |
| Charter parties, | 23,476 26 | |

The case was by agreement tried without a jury under the provisions of the Act of April 22nd 1874 (P. L. 109), before SIMONTON, P. J., whose findings of fact and conclusions of law were as follows :

Defendant is a corporation of this state with its principal place of business in Philadelphia. It owns sea-going steamships, which it employed during all the period included in the settlement, in the coasting trade between the ports of Philadelphia, in Pennsylvania, and Savannah, Georgia, and in foreign trade between New Orleans, in Louisiana, and Havana, in Cuba, and Vera Cruz, in Mexico, the vessels in the latter voyage touching at Key West, in Florida. All its vessels were duly enrolled and registered under the navigation law of the United States.

Some of the vessels were at times chartered for hire to parties who victualled and manned them at their own expense.

All the voyages were made on the ocean and the navigable waters of the United States. All the gross receipts taxed in said settlement were received for the transportation of freight and passengers between different states of the United States, or between ports of the place and foreign ports, and no part thereof was received for transportation wholly within the State of Pennsylvania.

The freight and passage money received for transportation between ports of Philadelphia and Savannah was $656,907.76 ; between New Orleans and foreign ports, $135,963.67, and for charter parties, $23,476.26.

Defendant is not in fault for failure to report its gross receipts, and no statement of the amount of tax claimed was sent to it by the Auditor-General before the settlement was made.

Two objections are specified in the appeal, and urged in argument, on behalf of defendant against the validity of the tax claimed in that account. It is contended, first, that the taxing Acts do not apply to corporations of the class to which defendant belongs ; and second, that if these Acts are construed to embrace corporations engaged in interstate and foreign commerce, they are in conflict with the third clause of the eighth section of article first of the Constitution of the United States, which confer upon Congress power to regulate commerce with foreign nations and among the several states.

In support of the first objection, it is said that defendant is a steamship company, and not a steamboat company, and that companies of the latter class are, while those of the former class are not, named in the taxing Act. We are not called upon to decide whether the term steamboat company would embrace defendant or not; it is certainly included within the phrase every " transportation company . . . and every other com-

pany . . . in any way engaged in the business of trans-
porting freight or passengers;" the first objection, therefore,
cannot be sustained.

But it is most earnestly and ably contended by the learned
counsel for the defendant that these Acts, if construed to im-
pose a tax upon the gross receipts of this company, derived
from the operations of interstate and foreign commerce are
in conflict with the commercial clause of the Constitution of
the United States and therefore invalid, and an elaborate ar-
gument is made to sustain the proposition that the power to
regulate commerce, interstate and foreign "is now held to be
exclusive in Congress." This may be conceded, and we may
also assume that, if these tax Acts when applied to defendant
amount to a regulation of commerce, they cannot be upheld.
The real question, therefore is, do the Acts of 1877 and 1879,
imposing a tax on gross receipts derived from the operations of
interstate and foreign commerce, amount to a regulation of that
commerce within the meaning of the Constitution of the United
States?

There was a period in the history of the legislation of the
state of Pennsylvania taxing corporations, and of the litigation
to which it gave rise, when this was a grave question; one
that called for and received much discussion from able counsel
and learned courts. But that time has passed. The point was
decided in the court of last resort, as is clearly shown by "State
tax on railway gross receipts," as it is styled, in accordance
with the absurd manner of naming cases affected by the then
reporter, 15 Wall. 284. That this was the point there decided will
be manifest by a comparison of this case with the "Case of the
State freight tax," 15 Wall. 232; in connection with what is
said of each of them in Osborne *v.* Mobile, 16 Wall. 479; by
Chief Justice CHASE. It is not to be denied, and it is freely
admitted by the court in these cases that the distinction be-
tween the taxation on tonnage and the tax on gross receipts,
by which one is held to be a regulation of commerce, and the
other is decided not to amount to such a regulation, is very
shadowy. Nevertheless the line has been clearly drawn by the
court along this border line, and it is our simple duty to con-
form to it, without speculating upon the chance of its being
changed. It can make no difference in the result that the
gross receipts taxed in 15 Wall. were derived from interstate
commerce, whereas in the case before us part of the receipts
has accrued from foreign commerce; if the tax is not a regula-
tion of the former, it cannot be of the latter.

This is undoubtedly a very onerous tax, which often presses
heavily upon corporations, deriving no net profits from their

[Philadelphia, &c. Steamship Co. *v.* Commonwealth.]

gross receipts, but the consideration cannot affect the decision of legal questions.

We cannot come to any other conclusion in this case than that the defendant is legally liable to this tax.

The interest and penalty charged in the settlement must, however, be struck out : Standard Oil Co. *v.* Commonwealth, 5 Out. 119.

The amount due is :

|  |  |
|---|---:|
| Tax as per settlement, | $6,450 78 |
| Interest, June 5th 1882, to January 22d 1883, | 489 25 |
| Commission, Attorney-General, | 322 53 |
| Total, | $7,262 56 |

In our opinion this would have been a proper case for an apportionment of the tax by the accounting officer, but as this does not appear to have been asked for, and as no objection is made to the settlement for the want of an apportionment, and we have not been asked to make it, nor been furnished with data for the purpose, we direct judgment to be entered for the amount of the total above stated, if exceptions be not filed according to law.

Judgment was subsequently entered for the Commonwealth for the above sum of $7,262.56 ; whereupon the defendants took this writ of error, and filed the following assignments of error :

1. Because the court erred in entering judgment upon the facts in favor of the plaintiff.

2. Because the court erred in not deciding that the Acts of the General Assembly of the Commonwealth of Pennsylvania, of March 20th 1877, and June 7th 1879, so far as the same imposed tax upon the gross receipts of steamships, received for the transportation of merchandise and passengers, between different states of the United States, and between ports of the United States and foreign countries, under the navigation laws of the United States, are in conflict with the commercial clause of the Constitution of the United States, article 1, section 8 (cl. 3), giving to Congress the exclusive right to regulate commerce with foreign nations, and among the several states.

3. Because the court erred in not deciding that steamships or vessels engaged in external trade, were not included under the denomination of " steamboats," in the said Act, the latter class of vessels being those referred to as engaged in the internal commerce of the state.

*Morton P. Henry*, for the plaintiff in error.—No state can regulate, interfere with, or abridge the coasting or foreign trade

carried on under the navigation laws of the United States: Gibbons *v.* Ogden, 9 Wheaton 1; Sinnot *v.* Davenport, 22 Howard 227; Almy *v.* California, 24 Howard 169; Henderson *v.* Mayor, 2 Otto 274. All commerce which is not completely internal, but which extends to or affects other states, is within the commercial clause of the Constitution of the United States: Gibbon *v.* Ogden, supra; Telegraph Company *v.* Texas, 15 Otto 460. The distinction between the tax on the water-carriage on public navigable rivers of the United States, and the internal trade by railways has been pointed out in two cases at least: Railroad Company *v.* Maryland, 21 Wallace on page 470; The Daniel Ball, 10 Wallace 557.

Taxation is a regulation of commerce. A corporation engaged in commerce is within the protection of the commercial clause; Telegraph Company *v.* Texas, 15 Otto 460; Inman Steamship Company *v.* Tinker, 4 Otto 238; Gibbons *v.* Ogden, supra.

A state can tax the business or franchise of a corporation within its limits, or which is being transported within the state: Tax on Gross Receipts, 15 Wallace 284. But a state cannot tax goods the property of citizens of other states, or intended to become the property of such citizens, while being carried in the interstate trade: Freight Tax Cases, 15 Wallace 232.

A state can authorize a corporation to build a ship, but not to use it. The ship itself, as property of citizens, may be taxed by the state, but its business cannot, because not controlled, regulated, or protected by the state. It is only when doing business within the state that it can be so taxed: Standard Oil Company *v.* Commonwealth, 5 Out. 119; St Louis *v.* Ferry Company, 11 Wallace 430. The freights are earned not under the franchise of the corporation, but by authority of the navigation laws of the United States. The Acts of Assembly impose a tax upon "steamboats," which term would include vessels used for the internal commerce of a state, but cannot be properly held to embrace sea-going vessels or steamships. This distinction is recognized in the Revised Statutes of the United States, and in the popular use of the words.

*Robert Snodgrass*, deputy attorney-general (with him *Lewis C. Cassidy*, attorney-general), contra.—The Railway Gross Receipt Cases (15 Wallace 284), rule this case. The Act of February 23d 1866, under which they arose, is practically identical with the Acts of March 20th 1877 (P. L. 6), and June 7th 1879, (P. L. 112), out of which this case springs. The tax is not upon interstate transportation, but upon the fruits of such transportation after they reach the treasury of the carrier, and become mingled with its general property. The distinction sought to relieve the plaintiff in

error cannot be found in the cases cited. A tax on gross receipts, and on the franchise of the corporation, are distinguished from the tax on tonnage, and are held not to be repugnant to the Constitution of the United States: Osborne *v.* Mobile, 16 Wallace 481 ; Munn *v.* Illinois, 4 Otto 135; Insurance Company of North America *v.* Commonwealth, 6 Norris 173. Even if the plaintiff in error is not a steamboat company within the meaning of the Acts of March 20th 1877, and June 7th 1879, it is certainly embraced within the class of " transportation companies :" Columbia Conduit Company *v.* Commonwealth, 9 Norris 307.

Chief Justice MERCUR delivered the opinion of the court, October 1st 1883.

The plaintiff in error is a corporation of this state. Its principal place of business is in Philadelphia. It is a transportation company. It owns sea-going steamships which it employs in the coasting trade between the port of Philadelphia and the ports of cities in other states and in other countries. The voyages are made on the navigable waters of the United States and on the ocean. Its vessels are enrolled and registered under the navigation laws of the United States. Its gross receipts were received for the transportation of freight and passengers between the different ports named.

The tax in question was imposed on gross receipts under the Acts of 20th March 1877, and of 7th June 1879.

It was urged that the Acts imposing taxation do not apply to a corporation of the class of the plaintiff in error. We think this position clearly untenable. Whether it be a steamship company or a steamboat company is wholly unimportant. It is clearly a transportation company engaged in the business of transporting both freight and passengers. It is thus brought clearly within the letter of the statute imposing the taxes.

It is further contended that if the Acts are held to apply to this corporation, they are in conflict with that clause of the Constitution of the United States which confers upon Congress the power " to regulate commerce with foreign nations, and among the several states." If a tax on gross receipts were the same as a tax on tonnage, there would be force in this position. The laying of a tax on tonnage is an attempt to regulate commerce. It bears directly on the owners of the goods who are having them transported. A tax on gross receipts is a tax on the money of the carrier after it has reached the treasury of the corporation. The fact that it may have been derived from transportation of freight between states or between the home port and a foreign port, matters not. It has, nevertheless, become subject to legitimate taxation. The statute does not

look beyond the corporation to those whose business have furnished the money which passed into its treasury. It looks no further than to determine whether the business of the corporation brings it within the statute for purposes of taxation. Whenever the fruits of the transportation have become mingled with its general property in the treasury, then the fund is subject to taxation by state authority : The Tax on Gross Receipts, 15 Wall. 284; Osborne *v.* Mobile, 16 Id. 481. A tax on gross receipts is in the nature of a tax on the franchise. It is solely by the exercise of the franchise granted by the Commonwealth that the corporation obtains the money on which this tax is imposed. It matters not where the money is gathered. The corporation obtained all its powers here. Its principal office is here. The Commonwealth which breathed into this corporation the breath of life, has power to impose taxes on the product of its own creation: Insurance Company of North America *v.* Commonwealth, 6 Norris 173 ; Commonwealth *v.* Gloucester Ferry Co., 2 Out. 105.

We do not deem it necessary to refer to, and answer seriatim, the numerous cases cited by the plaintiff in error. We do not think they controvert the cases we have cited and the reason on which they rest.

The learned judge arrived at a conclusion with which we are entirely satisfied.

Judgment affirmed.

GREEN, J., dissented.