## Commonwealth v. Southern Pipe Line Company.

*Taxation—Corporations—Gross receipts tax—Pipe lines—Interstate commerce—Constitutional law—Commerce clause—Act of June 1, 1889.*

1. A Pennsylvania corporation incorporated for the purpose, *inter alia*, of "transporting, piping, storing, insuring and shipping petroleum," and, in the course of that business, carrying oil across this State in pipe lines as a part of its transportation between points outside the State, is a common carrier engaged in interstate commerce.

2. The fact that a comparatively small quantity of oil which was produced in Pennsylvania was also transported through the same pipes to New Jersey does not constitute such a commingling of the oils from outside the State with that of Pennsylvania as to establish the character of all the oil as property of this State for purposes of taxation.

3. That the company owns tanks along its lines in which oil in the course of transportation is sometimes held awaiting specific instructions as to its delivery, or to allow the passage of other oil through the pipes, does not deprive the business of its character as interstate commerce.

4. The tax, established by the 23rd section of the Act of June 1, 1889, P. L. 420, 431, upon the gross receipts of pipe-line companies, *inter alia*, is a general tax without limitation, and is not merely a franchise tax.

5. A general tax, without limitation either as to amount or with reference to other taxing powers of the State, upon gross receipts derived from interstate commerce is a tax upon interstate commerce and is a violation of the commerce clause of the Federal Constitution.

6. The tax settled by the Commonwealth upon the gross receipts of a company engaged in interstate commerce under the 23rd section of the Act of June 1, 1889, P. L. 420, 431, is unconstitutional.

Appeal from settlement by the Commonwealth of tax on gross receipts. C. P. Dauphin Co., Commonwealth Docket, 1920, No. 3.

*William I. Schaffer*, Attorney-General, *William M. Hargest*, Deputy Attorney-General, and *A. L. Shay*, for plaintiff.

*Olmsted, Snyder & Miller, F. L. Crawford* and *H. C. Dorworth*, for defendant.

HENRY, P. J., 52nd judicial district, specially presiding, March 29, 1922.—This appeal was taken by the defendant from the settlement of an account by the Auditor General and State Treasurer of Pennsylvania taxing the gross receipts of the defendant's business for the six months' period ending Dec. 31, 1918.

The parties, by stipulation in writing, agreed to submit the case to the decision of the court without the aid of the jury, under the provisions of the Act of April 22, 1874, P. L. 109.

[The findings of fact, sixty-eight in number, are omitted from this report, as all essential facts may be gathered from the discussion.]

1 D. & C.

*Discussion.*

The tax in question was imposed under the provisions of the 23rd section of the Act of June 1, 1889, P. L. 420, 431, which reads as follows:

"Section 23. That every railroad company, pipe-line company, conduit company, steamboat company, canal company, slack-water navigation company, transportation company, street passenger railway company, and every other company, joint stock association or limited partnership, now or hereafter incorporated or organized by or under any law of this Commonwealth, or now or hereafter organized or incorporated by any other state or by the United States or any foreign government and doing business in this Commonwealth, and owning, operating or leasing to or from another corporation, company, association, joint stock association or limited partnership, any railroad, pipe line, slack-water navigation, street passenger railway, canal or other device for the transportation of freight or passengers or oil, and every telephone or telegraph company incorporated under the laws of this or any other state or of the United States and doing business in this Commonwealth, and every express company, incorporated or unincorporated, doing business in this Commonwealth, and every firm, copartnership or joint stock company or association doing express business in this Commonwealth, and every electric light company, and every palace car and sleeping car company, incorporated or unincorporated, doing business in this Commonwealth, shall pay to the State Treasurer a tax of 8 mills upon the dollar upon the gross receipts of said corporation, company or association, limited partnership, firm or copartnership, received from passengers and freight traffic transported wholly within this State, and from telegraph, telephone or express business done wholly within this State, or from business of electric light companies, and from the transportation of oil done wholly within the State; the said tax shall be paid semi-annually upon the last days of January and July in each year; and for the purpose of ascertaining the amount of the same, it shall be the duty of the treasurer or other proper officer of the said company, firm, copartnership, limited partnership, joint stock association or corporation, to transmit to the Auditor General a statement, under oath or affirmation, of the amount of gross receipts of the said companies, copartnerships, corporations, joint stock associations or limited partnerships derived from all sources, and of gross receipts from business done wholly within the State during the preceding six months ending on the first days of January and July in each year."

The Commonwealth contends that the act authorizes the collection of the tax upon gross receipts, whether realized from the transportation of oil in interstate commerce or intrastate commerce, where such receipts are limited to the charges for transporting the oil in or through the State of Pennsylvania; that the act is constitutional; that the tax in question is a franchise tax measured by the amount of the gross receipts of the defendant company, and, therefore, not in contravention of the Commerce Clause of the United States Constitution; that the defendant has commingled 19,862.52 barrels of oil produced in Pennsylvania with 2,768,094.50 barrels of the same grade of oil, known as Pennsylvania grade oil, but produced in other states, and that, as a consequence, the latter oil is "mingled with the general body of the property of the State and loses its identity as an interstate product;" that the oil passing through the tanks at Millway thereby comes to rest in the State of Pennsylvania, is mingled with the general property of the State, and becomes the subject of taxation by the State.

The defendant contends that the 23rd section of the Act of 1889 is restricted by its terms to intrastate commerce; that the said act is unconstitutional, in

so far as it attempts to tax gross receipts earned for the transportation of oil in interstate commerce; that all of the gross receipts of the defendant for the period in question were derived from the transportation of oil in interstate commerce; that the defendant company has already paid to the Commonwealth of Pennsylvania for the year 1918 a tax upon its capital stock amounting to $117,500, which represents a tax upon its assets, and that any further attempt upon the part of the State of Pennsylvania to tax the gross receipts of the defendant would be imposing a burden upon interstate commerce, and, therefore, would be unlawful, as in contravention of section 8 of art. 1 of the Federal Constitution and of the Acts of Congress regulating commerce between the states.

The principal controlling facts as established by the evidence formally found by the court are that the business of the defendant is the transporting of oil owned by others, through its pipe lines, and all its gross receipts are derived from the transportation and pumping of oil in commerce between the states, the only oil produced in Pennsylvania being 19,862.52 barrels, which was consigned to Bayonne, N. J.; that the only delays in this transportation of oil in the tanks or pipes of the defendant are such as are necessary in the practical and continuous operation of such pipe lines and the distribution of the proper grade of oil to the consignee designated by the shipper and owner.

We cannot adopt the construction contended for by the defendant, namely, that the Act of June 1, 1889, under which the tax is assessed, must be limited to intrastate commerce. The language of the act plainly indicates an intention to tax the gross receipts of pipe-line companies, derived "from the transportation of oil done wholly within the State," and this is sufficiently broad to include earnings within the State upon oil in interstate commerce. The clause refers to the part played in the transportation of the oil by the company taxed, rather than to the movement of the oil in which the carrier has not taken a part.

The principal question for determination is whether the said Act of 1889 is constitutional under the facts of the case before us. In the abstract, the act is not necessarily an interference with, or a burden upon, interstate commerce. Where the tax is in reality a franchise tax, and the amount is measured by the earnings, it has been upheld. U. S. Express Co. v. Minnesota, 223 U. S. 335, 344, the court holding that "the mere fact that a corporation is engaged in interstate commerce does not exempt its property from state taxation:" Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 82.

There are numerous other cases in which a property tax or a franchise tax, or an income tax, though measured by earnings wholly or partly derived from interstate commerce, has been sustained where it is part of the general system of taxation and limited in operation or amount.

The present tax must be considered as one without limitation, without any designation as a franchise tax, and with the established fact that the defendant company is subjected to and has paid the capital stock tax which covers all its assets. The first tax of this character enacted in Pennsylvania, to which our attention has been directed, is the Tonnage Tax of 1864, which was declared unconstitutional in the Tonnage Tax Cases, 15 Wall. 232. This act was followed by the Act of Feb. 23, 1866, P. L. 82, taxing gross receipts, which was repealed by the Act of April 24, 1874, P. L. 68, but re-enacted March 20, 1877, P. L. 6, which was amended June 7, 1879, P. L. 112, which was supplemented by the Act of June 1, 1889, P. L. 420, under which the present tax was assessed. The original gross receipts tax was upheld in Phila. & Reading Ry. Co. v. Pennsylvania, 82 U. S. 284, but this decision was criti-

1 D. & C.

cised, questioned and overruled, and the gross receipts tax held invalid as an unlawful interference with interstate commerce in Philadelphia and Southern Steamship Co. *v.* Pennsylvania, 122 U. S. 326, which last-mentioned decision has been cited with approval in many later and recent cases. The tax on gross receipts derived from interstate commerce was held invalid in Fargo *v.* Michigan, 121 U. S. 230, Western Union Telegraph Co. *v.* Pennsylvania, 128 U. S. 39. In Galveston R. R. Co. *v.* State of Texas, 210 U. S. 217, the line of a carrier was wholly within the state, but its gross receipts were held not taxable if partly derived from the carriage of passengers and freight coming from or destined to points without the state. The commerce was interstate. In Looney *v.* Crane Co., 245 U. S. 178, an attempt was made to tax a foreign corporation doing business in Texas by levying a tax upon the capital stock, surplus and undivided profits, without limitation or restriction, and the Act was held to be unconstitutional. In Crew-Levick Co. *v.* Pennsylvania, 245 U. S. 292, a tax levied under the Mercantile License Act of Pennsylvania was declared invalid where it assumed to tax merchandise shipped from the plaintiff's warehouse in Pennsylvania to foreign countries.

Among the cases sustaining the tax, where it was part of the general system of taxation, but limited in operation or amount, are Cudahy Packing Co. *v.* Minnesota, 246 U. S. 450, where the act provided that the tax in question should be "in lieu of other taxes on the property." In Meyer *v.* Wells, Fargo & Co., 223 U. S. 298, the tax was held invalid because not so limited, and in U. S. Express Co. *v.* Minnesota, 223 U. S. 335, the tax was sustained because of a similar limitation. In Postal Telegraph Cable Co. *v.* Adams, 155 U. S. 688, the tax was "in lieu of other state, county and municipal taxes." In Maine *v.* Grand Trunk Ry. Co., 142 U. S. 217, buildings, lands and fixtures outside of the railroad's right of way were taxed as property, and a franchise tax was levied for the privilege of doing business in the state, which was in lieu of all other taxes upon such railroad and its property, and the tax was upheld. In Baltic Mining Co. *v.* Massachusetts, 231 U. S. 68, and Kansas City Ry. Co. *v.* Kansas, 240 U. S. 227, the tax was upheld because of such limitation, while in Looney *v.* Crane Co., 245 U. S. 178, International Paper Co. *v.* Massachusetts, 246 U. S. 135, and Locomobile Company of America *v.* Massachusetts, 246 U. S. 146, the tax was held invalid because of the want of such limitation.

The Pennsylvania tax is without limitation, and, therefore, comes within the ban of this and other authorities of the Supreme Court of the United States.

The Commonwealth rests its contention largely upon the reasoning of Pennsylvania decisions which have been overruled by the United States Supreme Court, and upon authorities sustaining the imposition by states of the franchise tax. It is urged that the Pennsylvania courts have construed these taxes on gross receipts as a franchise tax, and that the United States Supreme Court decisions recognize the construction of the State court. Reliance is placed upon the sentence "a tax on gross receipts is in the nature of a tax on the franchise," found in Philadelphia & Southern Steamship Co. *v.* Com., 104 Pa. 109, a case in which the act under which the tax was laid was declared unconstitutional in 122 U. S. 326, and while the Federal courts have held that in a matter of construction, they will follow the state courts, yet in determining the constitutionality of a state enactment or the validity of a tax laid thereunder, they have time and again stated that "the substance rather than the form" is to be regarded, and "the controlling test

is to be found in the operation and effect of the law as applied and enforced by a state:" St. Louis Southwestern R. R. Co. v. Arkansas, 235 U. S. 350; Western Union Telegraph Co. v. Kansas, 216 U. S. 1.

The Commonwealth strongly insists that St. Louis Southwestern R. R. Co. v. Arkansas, 235 U. S. 350, is authority for the position that the tax in question is a franchise tax, and that it is not invalidated by a tax assessed against the capital stock or assets of the same corporation. In that case the State of Arkansas, by what was designated as a franchise tax, assumed to levy an initial tax against foreign corporations doing business in the state of a like amount as assessed against domestic corporations, and, in addition, provided for an annual tax "for the privilege of exercising its franchise in the state." This tax was based upon a specified percentage of the capital stock of the corporation represented by property owned and used in business transacted in the state. The tax was sustained, the court holding that the franchise intended to be taxed is that which relates solely to intrastate business, and that the initial fees were also charged for the privilege of doing intrastate business. As held, "the tax . . . is not in any wise based upon the receipts of a railroad company from interstate commerce." This sentence in itself conclusively distinguishes that case from the one at bar.

The Commonwealth further contends that the oil in the tanks at Millway "has come to rest" in the State and thereby has lost its character as interstate commerce, and is a part of the property of the State. We must, however, distinguish between storage or coming to rest for the accommodation and convenience of the owner and a rest imposed by a carrier for the convenience of transportation and distribution to the consignee designated by the owner at the time of tender of shipment to the original carrier. Delays of this character and of far longer duration have been held to be incidental to the transportation: Swift & Co. v. United States, 196 U. S. 375; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498; Ohio R. R. Commission v. Worthington, 225 U. S. 101; United States v. Union Stock Yard, 226 U. S. 286; Texas & N. O. R. R. Co. v. Sabine Tram Co., 227 U. S. 111; Railroad Commission of Louisiana v. Texas & Pacific Ry. Co., 229 .U. S. 336; Western Transit Co. v. Leslie, 242 U. S. 448.

The cases relied upon by the Commonwealth to sustain this position are: American Steel and Wire Co. v. Speed, 192 U. S. 500, in which the goods were stored in a warehouse by the owners, where they were held for sale and delivery as contracts were completely consummated. In General Oil Co. v. Crain, 209 U. S. 211, the "oil had reached the destination of its first shipment and was held there, not in necessary delay or accommodation to the means of transportation, but for the business purposes and profit of the company." While in Susquehanna Coal Co. v. South Amboy, 228 U. S. 665, coal was shipped to another state and there stored subject to the disposition of the coal company "in anticipation of orders from regular customers in the near future." In all of these cases the merchandise came to rest for the convenience of the business purposes of the owner, and, therefore, could not be considered as being in interstate commerce.

The remaining contention of the Commonwealth is that 19,868.52 barrels of oil produced in Pennsylvania were commingled with Pennsylvania grade oil from other states, and that thereby all of such Pennsylvania grade oil, amounting to 2,768,094.50 barrels, must be considered as "mingled with the general body of the property of the State and loses its identity as an interstate product." The weakness of this position is that it is not sustained by

1 D. & C.

facts. The records of the defendant company, upon which both the Commonwealth and the defendant rely for the facts as to the origin and destination of the oil transported by the defendant, as well as the receipts of the company during the taxing period in question, show that these 19,868.52 barrels of oil produced in Pennsylvania were consigned to Bayonne, N. J., and there is no evidence in the case indicating that the oil was delivered to any other point. This oil consequently was in interstate commerce, as was all the other Pennsylvania grade oil transported by the defendant. Moreover, in Ohio Railroad Commission v. Worthington, 225 U. S. 101, the delivery of a small part of the interstate shipment to a point in Ohio, making such small portion intrastate commerce, did not affect the status of the large and substantial interstate shipments.

The court must, therefore, conclude that the act in question extends to earnings from interstate commerce; that the act is unconstitutional in that it taxes gross receipts derived from interstate commerce without any limitation in amount or upon other taxing power of the State, when the State has already levied a tax against the defendant upon its capital stock and assets. The settlement of the tax as made by the Auditor General and State Treasurer cannot stand.

### Conclusions of law.

1—"First. The defendant company has the right of eminent domain under the Act of June 2, 1883, P. L. 61."

2—"Third. The gross receipts tax upon a franchise of a corporation is a lawful and proper tax, and may be levied without infringing the Commerce Clause or the Equal Laws Clause of the Constitution of the United States, even though the gross receipts are derived in part or wholly from the subject of interstate commerce."

These two conclusions are in affirmance of the first and third requests of the Commonwealth for conclusions of law.

3—"First. The defendant company is a common carrier under the Act of Congress of Feb. 4, 1887, commonly known as the Interstate Commerce Act, as amended by the Act of June 29, 1906."

4—"Second. The gross receipts tax under the Act of 1889 (P. L. 420), section 23, is not a tax upon any corporate franchise."

5—"Fifth. The value of a corporate franchise may not be measured for the purposes of taxation by the gross receipts of the corporation, when those gross receipts are derived from interstate commerce, unless the tax so levied is in lieu of other property taxes and is a part of a general system of taxation, or unless the act imposing the tax definitely limits the tax to a fixed, reasonable amount."

6—"Sixth. The gross receipts tax under the Act of 1889 (P. L. 420), section 23, as far as the same relates to the gross receipts of a pipe-line company, is not a tax upon the franchise of that company, and if such gross receipts are derived from interstate commerce, the tax is unlawful and the act, as to such company, violates the Commerce Clause of the United States Constitution."

7—"Seventh. Whether commerce in commodities in a particular instance is interstate depends upon the movement of the commodities carried, and not upon the particular length of time or portion of the through route during or over which any particular carrier does the transporting."

8—"Eighth. The oil not produced in the State of Pennsylvania transported by the Southern Pipe Line Company during the six months' period ending Dec. 31, 1918, was moved in interstate commerce, irrespective of the fact that

the share of such transportation performed by the Southern Pipe Line Company itself was to a large extent so performed within the State of Pennsylvania."

9—"Ninth. The delays of oil in the lines and tanks of the defendant during the six months ending Dec. 31, 1918, were merely incidental to transportation, and did not affect the interstate character of the commerce, nor did they cause any break in the 'current' of that commerce."

10—"Tenth. During the six months ending Dec. 31, 1918, there was no delay in the movement of the oil in the tanks of the Southern Pipe Line Company at Millway greater than was made necessary by the change of the grades of oil, or than was necessary for efficiency of operation and to keep the lines going at their maximum capacity."

11—"Eleventh. During the six months' period ending Dec. 31, 1918, the tanks of the Southern Pipe Line Company at Millway were used solely as operating tanks."

12—"Twelfth. During the six months' period ending July 18, 1920, there was no delay in the movement of oil by the Southern Pipe Line Company at Millway greater or longer than was necessitated by the requirements and exigencies of transportation."

13—"Thirteenth. During the six months ending Dec. 31, 1918, the Southern Pipe Line Company did not store any oil in its lines or tanks."

14—"Fourteenth. The delays of commodities, while in the custody of a common carrier, which are due simply to the necessities of orderly transportation, or are caused by the lack of sufficient facilities of transportation, when the commodities have theretofore been moved in interstate commerce, do not affect the interstate character of the commerce, nor do they cause any break in its 'current.' "

15—"Fifteenth. Delays in the lines or tanks of a pipe-line company, due solely to the fact that the capacity of its lines is not sufficient at a given point to enable it to forward immediately all the oil consigned over a particular route, which oil had theretofore been moved in interstate commerce, do not affect the interstate character of the commerce, nor do they cause any break in the 'current' of that commerce."

16—"Sixteenth. Where oil has been moved in interstate commerce, and it is destined by its shippers to go to some one of several designated points in another state from that in which it originated, the absence of a definite destination in such other state for a particular portion of the oil does not alter the interstate character of the shipment."

17—"Seventeenth. It is not essential that the particular destination of any particular portion of a commodity transported be fixed in order to prevent the interruption of an interstate movement, when the destinations of all the commodity in question are certain designated points in states other than those in which the commodity originated, and which points were known and fixed before the commodity was started upon its interstate journey."

18—"Eighteenth. Where oil is moved in interstate commerce, and its destination in general to certain points in other states is known and fixed, the absence of a definite destination for any particular part of the oil does not alter the interstate character of the shipment."

19—"Nineteenth. The fact that oil moved in interstate commerce was received by the Southern Pipe Line Company into its tanks at Millway, all of which oil was destined to be transported to some one of several designated points, but as to any particular part of which the particular destination was not known or fixed, and that the oil so received was distributed by the South-

1 D. & C.

ern Pipe Line Company to the various designated points in the quantity designated by the terms of the shipment, did not alter the interstate character of the shipment."

20—"Twentieth. The mixture of a small amount of Pennsylvania grade oil originating in the State of Pennsylvania with the general mass of oil of that grade originating elsewhere, which was transported by the Southern Pipe Line Company during the six months' period ending Dec. 31, 1918, the oil so originating in Pennsylvania being less than 1 per cent. of the whole, had no effect on the interstate character of the oil which originated elsewhere than in Pennsylvania." (This conclusion is strengthened by the fact that such oil originating in Pennsylvania is consigned to points beyond the State.)

21—"Twenty-first. Oil produced in other states than Pennsylvania, which, in the course of transportation, has become mixed with a small percentage of oil produced in Pennsylvania, does not on that account lose its interstate identity so as to become in Pennsylvania subject to a tax on the gross receipts derived from its transportation."

22—"Twenty-second. Oil flowing from other states into the tanks of the defendant company, where it was held for a period of a few days, in order to carry out an orderly system of transportation and to enable the defendant company to fulfill its obligations as a common carrier, did not cease to be in interstate commerce, and the gross receipts derived from its transportation are not the proper or legal subject of taxation."

23—"Twenty-third. The defendant company is not liable to pay any tax on gross receipts received from the transportation of oil during the six months ending Dec. 31, 1918, where such oil was not produced within the State of Pennsylvania." (Nor is the defendant liable to pay the tax on gross receipts received from the transportation of oil produced within the State of Pennsylvania, but consigned to points beyond the State.)

24—"Twenty-fourth. The defendant company is not liable to pay any tax on gross receipts received during the six months ending Dec. 31, 1918, for pumping oil for the National Transit Company, such service being an incident to interstate transportation."

25—"Twenty-fifth. The defendant company is not liable to pay any tax upon any portion of its gross receipts received for the transportation of oil as a franchise tax."

26—"Twenty-sixth. Judgment should be ordered in favor of the defendant, adjudging that the defendant is not liable to the Commonwealth for any tax on its gross receipts from the transportation of oil during the six months' period ending Dec. 31, 1918, and that the tax on gross receipts charged for said period against the defendant be disallowed."

The conclusions of law from the third to the twenty-sixth, inclusive, are in affirmance of the defendant's requests for conclusions of law, excepting the third and fourth of such requests.

The Commonwealth's second request for conclusion of law, and its similar requests from the fourth to eighteenth, inclusive, are declined. The defendant's third and fourth requests for conclusions of law are declined.

And now, to wit, March 28, 1922, in accordance with the foregoing findings and conclusions, judgment is directed to be entered against the Commonwealth and in favor of the defendant company, unless exceptions be filed within the time limited by law.

From William Jenkins Wilcox, Harrisburg, Pa.